[No. E054307. Fourth Dist., Div. Two. Apr. 28, 2015.]

THE PEOPLE, Plaintiff and Respondent, v.
VICTORIA SAMANTHA COOK, Defendant and Appellant.

342

**COUNSEL**

Thomas K. Macomber, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Steven T. Oetting and Tami Falkenstein Hennick, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**MILLER, J.**—Defendant and appellant Victoria Samantha Cook pled guilty to the misdemeanor offense of driving with a suspended license (count 4—Veh. Code, § 14601.1, subd. (a)). Thereafter, a jury convicted defendant of three counts of gross vehicular manslaughter for the respective deaths of Zaria Williams (Williams), Christine Giambra (Giambra), and Cedric Page (Page) (counts 1–3—Pen. Code, § 192, subd. (c)(1)).[1] The jury additionally found true three allegations attached to the count 1 offense that defendant had personally inflicted great bodily injury upon Giambra, Page, and Robert Valentine (Valentine) (former § 12022.7, subd. (a)). The court sentenced defendant to an aggregate term of incarceration of nine years eight months, striking punishment for the enhancements as to Giambra and Page, but imposing a three-year consecutive term for the enhancement as to Valentine.

On appeal, defendant makes four assignments of error: (1) the court erred in excluding evidence of the victims' propensity for reckless driving as a potential defense of legal necessity; (2) the People committed prejudicial prosecutorial misconduct in ostensibly alluding to the pristine driving records of the victims and witnesses; (3) the former section 12022.7[2] enhancements must be reversed because the statute explicitly forbids its application to cases of manslaughter; and (4) the trial court abused its discretion by denying defendant's request for release of juror information. We reverse the true findings on the former section 12022.7, subdivision (a) enhancements. In all other respects, we affirm the judgment.

### FACTUAL AND PROCEDURAL HISTORY

Austin Welch (Welch) testified that on June 2, 2009, he was driving home eastbound on Highway 74 from work. He witnessed the driver of a charcoal gray Ford Fusion, later determined to be defendant, driving erratically. Traffic slowed in the right lane, in which defendant was traveling; defendant then pulled out abruptly into the fast lane in front of a silver Audi whose driver, later identified as victim Page, was forced to slam on his brakes.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] The jury found not true an allegation attached to count 1 that defendant had personally inflicted great bodily injury against Danyell Rivera (Rivera).

Defendant immediately sped up as Page slowed to allow space between the two cars. Defendant later changed back into the slow lane. As traffic slowed in that lane, defendant once again changed lanes back into the fast lane without signaling, cutting Page off and forcing Page to slam on his brakes and swerve to avoid hitting defendant's car. Defendant was driving "very fast" and "swerved pretty hard."

Both drivers then sped up quickly. Page came so close to the rear of defendant's vehicle that Welch could not see a gap between them. Without signaling, defendant once again changed lanes into the slow lane in front of Welch's vehicle, where there was insufficient space to fit; defendant's vehicle collided with Welch's. This caused defendant's vehicle to fishtail, dart across lanes, and eventually come to rest in a field on the side of the road.

Welch thereafter witnessed a Mitsubishi SUV launch into the air. Afterward, Welch was able to see that Page's Audi and the Mitsubishi had been involved in a head-on collision. A white Nissan Altima (driven by Rivera) then rear-ended the Mitsubishi. Rivera suffered a dislocated elbow. The driver of the Mitsubishi, Valentine, was "screaming for his life" and had blood coming out of his mouth. Deputy Coroner Kathleen Cohen testified Page, Giambra, and Williams were already dead when she arrived at the scene of the accident.

California Highway Patrol Officer David Kling was dispatched to investigate the collision. He interviewed a number of the drivers and witnesses to the accident. He requested help from the Multidisciplinary Accident Investigation Team (MAIT), which consists of "specialized officers who do accident reconstruction and very specialized investigation into complex accidents." Together they gathered evidence from the scene, and surveillance video from a nearby convenience store and a bus traveling nearby at the time of the accident.

Officer Kling and MAIT Officer Scott Parent concluded defendant was the primary cause of the collision because of her unsafe lane change. They determined the sequence of events to have begun when defendant's vehicle collided with Welch's, causing defendant to swerve left, colliding with Page's vehicle and forcing it into oncoming traffic. Page's vehicle thereafter collided head on with Valentine's. Rivera braked to avoid hitting Valentine's vehicle; however, Rivera grazed Valentine's Mitsubishi and hit Page's Audi.

The People played the video recordings from the convenience store and bus during trial. Juanita Solt (Solt), who was traveling eastbound on Highway 74 at the time of the accident, testified she saw a black Acura driving aggressively, tailgating vehicles, honking its horn, swerving in and out of

lanes, and eventually traveling into defendant's lane, forcing defendant into the slow lane and Page's vehicle. Officer Kling testified he had determined that Solt had not actually witnessed the accident because the video showed her coming through the scene 13 to 14 seconds after the vehicles involved, which contradicted her statement that she was right behind the vehicles involved. None of the other witnesses described seeing the black vehicle reported by Solt.[3] Officer Kling did not find any black paint transfer on any of the cars involved in the collision.

## DISCUSSION

A.–C.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### D. *Petition for Release of Juror Information*

Defendant contends the trial court abused its discretion in denying her petition to disclose juror information. We disagree.

Code of Civil Procedure section 206, subdivision (g) provides: "Pursuant to [Code of Civil Procedure] Section 237, a defendant or defendant's counsel may, following the recording of a jury's verdict in a criminal proceeding, petition the court for access to personal juror identifying information within the court's records necessary for the defendant to communicate with jurors for the purpose of developing a motion for new trial or any other lawful purpose."

■ Upon the recording of a jury verdict in a criminal case, the court's record of the jurors' personal identifying information is to be sealed. (Code Civ. Proc., § 237, subd. (a)(2).) Any person may petition the court for disclosure of the identifying information, and the petition must be supported by a declaration establishing good cause for the disclosure. (Code Civ. Proc., § 237, subd. (b); *Townsel v. Superior Court* (1999) 20 Cal.4th 1084, 1098, fn. 7 [86 Cal.Rptr.2d 602, 979 P.2d 963]; *People v. Granish* (1996) 41 Cal.App.4th 1117, 1131 [49 Cal.Rptr.2d 45].)

Good cause, in the context of a petition for disclosure to support a motion for a new trial based on juror misconduct, requires "a sufficient showing to support a reasonable belief that jury misconduct occurred . . . ." (*People v.*

---

[3] Defendant testified she was followed by a black car, but conceded she could have been "persuaded" by Solt's description of the vehicle immediately after the accident.

*See footnote, *ante*, page 341.

*Rhodes* (1989) 212 Cal.App.3d 541, 552 [261 Cal.Rptr. 1]; accord, *People v. Wilson* (1996) 43 Cal.App.4th 839, 850–852 [50 Cal.Rptr.2d 883].) Good cause does not exist where the allegations of jury misconduct are speculative, conclusory, vague, or unsupported. (See *Wilson*, at p. 852.) We review the denial of a petition for disclosure for an abuse of discretion. (*People v. Jones* (1998) 17 Cal.4th 279, 317 [70 Cal.Rptr.2d 793, 949 P.2d 890]; accord, *People v. Carrasco* (2008) 163 Cal.App.4th 978, 991 [77 Cal.Rptr.3d 912]; *People v. Santos* (2007) 147 Cal.App.4th 965, 978 [55 Cal.Rptr.3d 1].)

Here, defense counsel contended he posited good cause for release of juror information, because he had been "informed by a juror that during deliberations one of the jurors went out and purchased toy cars to re-enact the accident during the lunch break prior to the juror's verdict. As part of that conversation, the jurors discussed what [defendant's] options were when tailgated by [Page] and discussed other options never presented by even the prosecution." The court denied defendant's petition reasoning, "the law says that you can't do experiments. But there is no difference with using plastic cars trying to—and looks like what they were trying to do was trying to find a way out not to convict her. But using plastic cars is not an experiment. That is no different than drawing little pictures or using the yellow [Post-it] that says this car's here, that car's there. I don't see good cause, sir."

■ "Not every jury experiment constitutes misconduct. Improper experiments are those that allow the jury to discover *new* evidence by delving into areas not examined during trial. The distinction between proper and improper jury conduct turns on this difference. The jury may weigh and evaluate the evidence it has received. It is entitled to scrutinize that evidence, subjecting it to careful consideration by testing all reasonable inferences. It may reexamine the evidence in a slightly different context as long as that evaluation is within the ' "scope and purview of the evidence." ' [Citation.] What the jury cannot do is conduct a new investigation going beyond the evidence admitted." (*People v. Collins* (2010) 49 Cal.4th 175, 249 [110 Cal.Rptr.3d 384, 232 P.3d 32].)

■ Defendant's showing fell short of good cause for release of juror information. The use of toy cars to reenact the collision was not an investigation that went beyond the evidence presented at trial. Rather, it appears the jurors simply attempted to reenact the versions of the collisions as adduced in the evidence at trial. There was no showing the jurors attempted to discover new evidence by their experiment; it is difficult to imagine how they would have done so with such an experiment. Thus, the court acted within its discretion in denying defendant's petition.

## DISPOSITION

The true findings on the section 12022.7, subdivision (a) enhancements with respect to victims Giambra, Page, and Valentine are reversed. The superior court is directed to generate a new minute order striking the enhancements. The superior court is further directed to resentence defendant to effectuate the striking of the enhancement as to Valentine upon which it imposed a three-year consecutive sentence. The clerk is directed to forward a copy of the corrected minute order and abstract of judgment to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

McKinster, Acting P. J., and Codrington, J., concurred.