Filed 12/7/15 (2d appeal)

CERTIFIED FOR PARTIAL PUBLICATION[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E061986 |
| v. | (Super.Ct.No. SWF029110) |
| LIONEL FREDRICK JOHNSON, JR., | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County. Dennis A. McConaghy, Judge. (Retired judge of the Riverside Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.) Affirmed in part, conditionally reversed in part, and remanded with direcitons.

David L. Polsky, under appointment by the Court of Appeal, for Defendant and Appellant.

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II, III, and IV.

1

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Senior Assistant Attorney General, and Peter Quon, Jr. and Anthony Da Silva, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Lionel Fredrick Johnson, Jr., while plainly drunk, admitted to the police that he had been driving an SUV that had just plowed into another SUV, injuring five people.

In a previous appeal (*People v. Johnson* (2013) 222 Cal.App.4th 486), we held, among other things, that the trial court erred by finding insufficient evidence to require a hearing on defendant's posttrial motion for disclosure of jurors' identifying information, because one of the supporting declarations did contain evidence of one instance of juror misconduct. Noting, however, that the declarations were in conflict, we directed the trial court to grant a hearing unless it found that that declaration was not credible.

On remand, the trial court found that the declaration was not credible. Accordingly, once again, it denied the motion without a hearing.

In this second appeal, defendant's sole contention is that, in the previous appeal, we erred by directing the trial court to consider the credibility of the declarations on remand.

In the unpublished portion of this opinion, we will hold that, under the peculiar circumstances of this case, the doctrines of forfeiture, stare decisis, and the law of the case do not prevent us from reaching defendant's contention.

In the published portion of this opinion, we will hold that, in deciding whether to hold a hearing on a motion for disclosure of jurors' identifying information, the trial court must assume that the declarations supporting the motion are credible; we will overrule our previous opinion to the extent that it held otherwise. Accordingly, we will direct the trial court to hold an evidentiary hearing on defendant's motion.

I

FACTUAL AND PROCEDURAL BACKGROUND

A. *Conviction and Sentencing*.

Defendant was found guilty of driving under the influence and causing injury (Veh. Code, § 23153, subd. (a)) and driving with a blood alcohol level of 0.08 percent or more and causing injury (Veh. Code, § 23153, subd. (b)). On each count, one enhancement for personally inflicting great bodily injury (Pen. Code, § 12022.7, subd. (a)) and three enhancements for causing injury to an additional victim (Veh. Code, § 23558) were found true. Two "strike" priors (Pen. Code, §§ 667, subds. (b)-(i), 1170.12), two prior serious felony conviction enhancements (Pen. Code, § 667, subd. (a)), and one 1-year prior prison term enhancement (Pen. Code, § 667.5, subd. (b)) were found true. As a result, defendant was sentenced to a total of 41 years to life in prison, along with the usual fines, fees, and directives.

B. *Defendant's Motion for Disclosure of Jurors' Identifying Information.*

The sentencing hearing was held more than 13 months after the jury returned its verdicts. One month before the sentencing hearing, defendant filed a motion for release

3

of jurors' identifying information.  (Code Civ. Proc., § 237.)  The motion was supported by declarations from defendant's mother and stepfather, Joy and Delvin Livingston.

According to defendant's mother, on the day after the jury returned its verdicts, "as we were leaving the courtroom, three female jurors were standing outside the courtroom."  One was crying.  When the crying juror learned who defendant's mother and stepfather were, she said, "I'm so sorry. . . .  I want to talk to the judge."  She then asked, "[W]hy didn't [defendant] take the witness stand and defend himself[?]  Why didn't he say something, we need to hear it from him."  Defendant's mother and stepfather introduced her to defense counsel and told him what she had said.  He gave her his card "and told her to give him a call."

According to defendant's stepfather, at a hearing on the day after the jury returned its verdicts, he and defendant's mother were sitting inside the courtroom; three female jurors were sitting behind them.  When they learned who defendant's mother and stepfather were, one of them said she was sorry and started to cry.  The other two jurors said "' . . . it was hard for us to vote guilty.  [Defendant] may . . . not [have] been the driver and it was possible that he was covering for someone else.'"  One of the two jurors "further stated that most of them were thinking that if [defendant] was not the driver, why didn't he take the stand to defend himself during the deliberations."  The crying juror "started to cry more and said she needed to talk to the judge to do something about what happened."  "The juror" also said something that the jurors "wrestled with" was "why isn't [defendant] taking the stand."  Finally, "[t]he three jurors indicated that they were at

4

least half of the jurors who raised the question if he is innocent why didn't he take the stand to defend himself." When the hearing was over, all three jurors spoke to defense counsel.

On the date set for sentencing, the trial court first heard argument on defendant's motion. The prosecutor conceded, "[A]ssuming the facts as stated in the motion are correct, I believe there is good cause to disclose the juror information." However, he argued that the declarations were not credible because, if the facts stated in them were true, defense counsel would not have waited over a year to file the motion.

The trial court denied the motion because, in its view, the declarations fell short of showing any jury misconduct.

C.      *The First Appeal*.

Defendant appealed, arguing (among other things) that the trial court had erred by denying his motion for disclosure of jurors' identifying information.

As threshold matters, we held that: (1) the declarations were not inadmissible hearsay (*People v. Johnson*, *supra*, 222 Cal.App.4th 486, 493-494); (2) defendant did not have to show that he had made diligent efforts to contact the jurors by other means (*id*. at pp. 495-497); and (3) the motion was timely (*id*. at pp. 497-498).

We then held that, under Evidence Code section 1150, all of the evidence of purported juror misconduct in defendant's mother's declaration was inadmissible. (*People v. Johnson*, *supra*, 222 Cal.App.4th at p. 495.) Similarly, all of the evidence of purported juror misconduct in defendant's stepfather's declaration was inadmissible, with

5

one exception — the statement that "at least half of the jurors . . . raised the question if he is innocent why he didn't take the stand to defend himself." (*Ibid.*) We explained: "'[B]y violating the trial court's instruction not to discuss defendant's failure to testify, the jury committed misconduct. [Citations.]' [Citation.] Moreover, the mere making of such a statement in the jury room was an overt act of misconduct and admissible as such under Evidence Code section 1150. [Citations.]" (*Ibid.*)

We then stated: "Finally, we also consider whether the trial court should have denied defendant's motion because, as the prosecutor argued below, the declarations were not credible. Certainly there was room for skepticism. The mother and stepfather contradicted each other on several points. If one chooses to credit the mother's account over the stepfather's, then there is no admissible evidence of juror misconduct at all. Moreover, it is hard to believe that the jurors told defendant's parents that they wanted to talk to the judge but did not say this to defense counsel. Indeed, according to the mother, she told defense counsel what the juror had said. Even assuming this information was not volunteered, it is hard to believe that defense counsel did not take the opportunity to debrief the jurors.

"Nevertheless, '"[t]he power to judge the credibility of witnesses and to resolve conflicts in the testimony is vested in the trial court"' [citation], even when the witnesses testify via declarations. [Citation.] Here, the trial court denied the motion, but not because the declarations were incredible. We cannot say that the declarations were incredible as a matter of law. Thus, we cannot affirm the denial on this ground.

6

However, it will be open to the trial court to make such a determination on remand."

(*People v. Johnson*, *supra*, 222 Cal.App.4th at pp. 498-499.)

In our disposition, we ordered: "The judgment with respect to the conviction is affirmed, and the judgment with respect to the sentence is reversed, subject to the following conditions. On remand, the trial court must reconsider defendant's motion for disclosure of jurors' identifying information, and it must grant that motion, unless it finds that the evidence that otherwise supports the motion is not credible. If . . . the trial court denies the motion for disclosure of jurors' identifying information, . . . the trial court must resentence defendant." (*People v. Johnson*, *supra*, 222 Cal.App.4th at pp. 499-500.)

The People filed a petition for rehearing, which we denied. Defendant did not file a petition for rehearing.

D.      *Proceedings on Remand.*

On remand, the trial court duly held another hearing on the motion. The prosecution introduced defendant's stepfather's rap sheet. Defendant introduced a letter from an Assistant United States Attorney. Apparently,[1] these exhibits showed that defendant's stepfather had been convicted in state court of domestic violence. He had also been convicted in federal court of drug distribution. He had been sentenced to life in prison; however, by providing information on other cases, he had gotten his life sentence "reduced to something that was less than life." In the opinion of the Assistant United

---

[1]      The parties have not included these exhibits in the clerk's transcript (see Cal. Rules of Court, rule 8.122(a)(3)) nor transmitted them to us (see *id*., rule 8.224).

7

States Attorney, he had shown himself to be "absolutely committed to telling the truth about others and most importantly about himself." If he were to be found guilty of perjury, he would be "jeopardizing himself in a very big way."

After hearing argument, the trial court once again denied the motion. It specifically found that defendant's stepfather's declaration was not credible: "I think the late filing certainly goes to the credibility of [defendant's stepfather]. And the prior convictions are admissible as impeachment, and the relationship with the defendant and . . . the defendant's mother." Accordingly, it resentenced defendant.

II

FORFEITURE

On remand, defense counsel did *not* argue that the trial court should *not* consider credibility. However, this was not a forfeiture, because any such argument would have been futile. (*People v. Sandoval* (2007) 41 Cal.4th 825, 837, fn. 4.) In the previous appeal, we specifically directed the trial court to consider credibility on remand. "'On remand with directions, after a judgment on appeal, the trial court has jurisdiction only to follow the directions of the appellate court; it cannot modify, or add to, those directions.' [Citation.]" (*People v. Vizcarra* (2015) 236 Cal.App.4th 422, 441.)

III

STARE DECISIS

One hurdle to defendant's contention is stare decisis. The relevant portion of our opinion in the previous appeal was published, and therefore it is citable precedent.

8

"Stare decisis is . . . 'a fundamental jurisprudential policy that prior applicable precedent [of an appellate court] usually must be followed [by that court] even though the case, if considered anew, might be decided differently by the current justices.' [Citation.]" (*Ventura County Deputy Sheriffs' Assn. v. Board of Retirement* (1997) 16 Cal.4th 483, 506.)

"'Because of the need for certainty, predictability, and stability in the law, we do not lightly overturn our prior opinions. [Citation.] However, this policy does not "'shield court-created error from correction,'" but "is a flexible one" that permits us "to reconsider, and ultimately to depart from, our own prior precedent in an appropriate case." [Citations.]'" (*People v. Mendoza* (2000) 23 Cal.4th 896, 924.)

Preliminarily, we note that "[t]he doctrine of . . . stare decisis[] extends only to the ratio decidendi of a decision, not to supplementary or explanatory comments which might be included in an opinion. . . . Only statements necessary to the decision are binding precedents; explanatory observations are not binding precedent. [Citations.]" (*Western Landscape Construction v. Bank of America* (1997) 58 Cal.App.4th 57, 61.)

In the previous appeal, neither of the parties briefed or argued the question of whether the motion should be denied because the declarations were not credible (although the People had argued this below). We considered this issue regardless, because it was relevant to our disposition. If the motion had to be denied in any event, because the declarations were not credible as a matter of law, then the claimed error was harmless; on the other hand, if the trial court could not consider credibility at all, then we had to direct

9

the trial court to grant a hearing on the motion. In the end, we decided that the trial court could consider credibility, but the declarations were not incredible as a matter of law; hence, we directed the trial court to determine credibility on remand.

Before oral argument, we sent the parties our tentative opinion (see Ct. App., Fourth Dist., Div. Two, Internal Operating Practices & Proc., VIII, Tentative opinions and oral argument), which made it clear that this was an issue. They did not request supplemental briefing.[2] Moreover, after we filed our opinion, neither side requested a rehearing on this issue.

In sum, then, our conclusion that the trial court could consider the credibility of the declarations was not dictum. At the same time, however, while there were several fully litigated holdings in the opinion, this was not one of them; it was simply an issue that we had to work through to get to our disposition. Thus, it was not the product of either thorough analysis or adversarial testing.

"[C]oncerns about stare decisis are 'at their acme . . . where reliance interests are involved . . . .' [Citation.]" (*People v. Superior Court* (*Sparks*) (2010) 48 Cal.4th 1, 21-22.) We know of no institutional or societal reliance on this aspect of our previous opinion. (Cf. *People v. Breverman* (1998) 19 Cal.4th 142, 178, fn. 26.) The case was decided only two years ago. So far, no published opinion has followed it on this

---

**2** To the best of our recollection, the parties did not address the issue at oral argument, but we cannot confirm this because we no longer have a recording of the oral argument.

particular point.  We therefore conclude that stare decisis does not prevent us from reconsidering its holding that the trial court could consider credibility on remand.

IV

LAW OF THE CASE

The second hurdle that defendant's contention faces is the law of the case doctrine.

"Under the doctrine of the law of the case, a principle or rule that a reviewing court states in an opinion and that is necessary to the reviewing court's decision must be applied throughout all later proceedings in the same case, both in the trial court and on a later appeal.  [Citations.]" (*People v. Jurado* (2006) 38 Cal.4th 72, 94.)

"The doctrine is one of procedure, not jurisdiction, and it will not be applied 'where its application will result in an unjust decision, e.g., where there has been a "manifest misapplication of existing principles resulting in substantial injustice" [citation] . . . .' [Citation.]" (*People v. Boyer* (2006) 38 Cal.4th 412, 441.)  "The unjust decision exception does not apply when there is a mere disagreement with the prior appellate determination.  [Citation.]" (*Morohoshi v. Pacific Home* (2004) 34 Cal.4th 482, 492.)

For the reasons that we will state in part V, *post*, our holding in the previous appeal did result from a manifest misapplication of existing principles.  Arguably, we could conclude that there was no substantial injustice to defendant himself — particularly in light of his failure to dispute that holding in supplemental briefing or in a petition for rehearing.  However, our previous opinion was published; thus, it can have ripple effects beyond this case alone.  As discussed in part III, *ante*, we are not aware of any substantial

11

reliance on the challenged aspect of our previous opinion to date. That means, however, that if we did err, now is the best time to say so.

We certainly do not intend to encourage parties to relitigate an issue that has already been fully litigated in a previous appeal and resolved in a published opinion. However, this is an unusual case. What is critical is that (1) our earlier opinion was published, (2) the asserted error was only a minor and tangential aspect of it, and (3) there has not yet been substantial reliance on the asserted error. We therefore conclude that this is an instance of an "unjust decision," rather than a "mere disagreement," and hence that we should not apply the law of the case.

V

CONSIDERING CREDIBILITY IN DETERMINING

WHETHER A PARTY HAS MADE "A PRIMA FACIE SHOWING"

UNDER CODE OF CIVIL PROCEDURE SECTION 237

Under Code of Civil Procedure section 237, any person may petition the trial court for access to personal juror identifying information. (Code Civ. Proc., § 237, subd. (b).) The petition must be accompanied by a declaration (or declarations). (*Ibid*.) Subject to exceptions not applicable here, "[t]he court shall set the matter for hearing if the petition and supporting declaration establish a prima facie showing of good cause for the release of the personal juror identifying information . . . ." (*Ibid*.) "Good cause, in the context of a petition for disclosure to support a motion for a new trial based on juror misconduct, requires 'a sufficient showing to support a reasonable belief that jury misconduct

12

occurred . . . .' [Citations.]" (*People v. Cook* (2015) 236 Cal.App.4th 341, 345-346 [Fourth Dist., Div. Two].)

If the trial court does set a hearing, it must provide notice to each of the jurors, either by personal service or by mail to his or her last known address. (Code Civ. Proc., § 237, subd. (c).) "Any affected former juror may appear in person, in writing, by telephone, or by counsel to protest the granting of the petition." (*Ibid.*) "After the hearing, the records shall be made available as requested in the petition, unless a former juror's protest to the granting of the petition is sustained. The court shall sustain the protest of the former juror if, in the discretion of the court, the petitioner fails to show good cause, the record establishes the presence of a compelling interest against disclosure . . . , or the juror is unwilling to be contacted by the petitioner." (*Id.*, subd. (d).)

The issue before us is fundamentally one of statutory interpretation. "'In construing a statute, our task is to determine the Legislature's intent and purpose for the enactment. [Citation.] We look first to the plain meaning of the statutory language, giving the words their usual and ordinary meaning. [Citation.] If there is no ambiguity in the statutory language, its plain meaning controls . . . . [Citation.] "However, if the statutory language permits more than one reasonable interpretation, courts may consider various extrinsic aids, including the purpose of the statute, the evils to be remedied, the legislative history, public policy, and the statutory scheme encompassing the statute." [Citations.]' [Citation.]" (*People v. Yartz* (2005) 37 Cal.4th 529, 537-538.)

Under section 237, the trial court's job is to determine whether the petitioner has "establish[ed] a prima facie showing of good cause . . . ." The statute does not tell us, in so many words, whether it can consider credibility in the process.

We have considered the legislative history of the "prima facie showing" requirement, to the extent that it is available through the Legislative Counsel's website, but we have not found it particularly helpful. The Legislature was concerned about "incidents where a defendant has received information about the jurors and has harassed or threatened them, by mail, from prison." (Sen. Com. on Crim. Proc., Analysis of Sen. Bill No. 508 (1995-1996 Reg. Sess.), Mar. 21, 1995, p. 4.) It therefore determined to require "some showing of good cause before the records are to be released." (*Id.* at p. 5.) After the bill was introduced, it was amended to require a prima facie showing of good cause before the trial court must hold an evidentiary hearing. (Sen. Bill No. 508 (1995-1996 Reg. Sess.) as amended Jul. 5, 1995, § 3.) We have found no readily available legislative history materials relating to the intent behind this amendment. (See, e.g., Assem. Com. on Public Safety, Analysis of Sen. Bill No. 508 (1995-1996 Reg. Sess.), as amended Jul. 6, 1995.)

Normally, however, a "prima facie showing" connotes an evidentiary showing that is made without regard to credibility. For example, in the context of an anti-SLAPP motion, to demonstrate a probability of prevailing on the merits, "' . . . the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment *if the evidence submitted by*

14

*the plaintiff is credited.*'" [Citation.]" (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88-89, italics added.)

This is particularly true when the prima facie showing merely triggers an evidentiary hearing, at which any necessary credibility determinations can still be made. *Spaccia v. Superior Court* (2012) 209 Cal.App.4th 93 discussed some of these situations. There, the petitioner claimed the trial court had erred by denying — without an evidentiary hearing — her motion to recuse the district attorney. (*Id.* at pp. 102, 108.) Under Penal Code section 1424, a motion to recuse a district attorney must be supported by affidavits; the district attorney may filed affidavits in opposition. (Pen. Code, § 1424, subd. (a)(1).) "The judge shall review the affidavits and determine whether or not an evidentiary hearing is necessary." (*Ibid.*)

The appellate court noted that the legal standard that applied in determining whether to hold an evidentiary hearing was an issue of first impression. (*Spaccia v. Superior Court*, *supra*, 209 Cal.App.4th at p. 109.) Based on the legislative history (*id.* at pp. 110-111), it determined that the Legislature did *not* intend to require an evidentiary hearing *only* when there was a disputed issue of material fact. (*Id.* at pp. 110-111.)

It then stated: "One situation in which a trial court is called upon to determine whether to grant an evidentiary hearing on an issue is a petition for a modification of a dependency order, under Welfare and Institutions Code section 388. Welfare and Institutions Code section 388 permits a parent or other interested party to seek to modify an existing dependency order. If it appears to the court that the best interests of the child

15

may be promoted by the proposed change of order, the court shall order that a hearing be held on the issue. [Citation.] The courts have concluded that a 'parent need only make a prima facie showing to trigger the right to proceed by way of a full hearing.' [Citation.] 'A "prima facie" showing refers to those facts which will sustain a favorable decision if the evidence submitted in support of the allegations by the petitioner is credited.' [Citation.] Similarly, an inmate seeking habeas corpus relief must state a prima facie case in order to obtain an order to show cause. [Citations.] In our view, a similar test should apply when a party seeks a hearing on a recusal motion under Penal Code section 1424: the party seeking an evidentiary hearing must make a prima facie showing by affidavit; a prima facie showing refers to those facts demonstrated by admissible evidence, which would sustain a favorable decision *if the evidence submitted by the movant is credited*." (*Spaccia v. Superior Court*, *supra*, 209 Cal.App.4th 93, 111-112, italics omitted & added, fn. omitted.)[3]

In our previous opinion, we relied on the general principle that the trial court, when deciding an issue of fact, can make credibility determinations even when the witnesses testify through declarations. (E.g., *People v. Hamlin* (2009) 170 Cal.App.4th 1412, 1463.) However, we overlooked the question of just what issue, exactly, the trial court was supposed to be deciding. Actually, because it was supposed to be deciding

---

[3] The Supreme Court later endorsed the *Spaccia* standard in *Packer v. Superior Court* (2014) 60 Cal.4th 695, 710, 712.

whether defendant had "establish[ed] a prima facie showing of good cause," credibility was irrelevant.

Thus, we sent the trial court off on a wild goose chase, in which it obediently considered such matters as the belated filing of the petition, the stepfather's prior convictions, and the stepfather's likely bias. These matters were irrelevant.

As we held in the previous appeal, the stepfather's declaration contained admissible evidence that juror misconduct occurred. Arguably, if the mother's declaration contradicted his declaration on this critical point, that would mean that the declarations as a whole still failed to make a prima facie case. (See *D.C. v. R.R.* (2010) 182 Cal.App.4th 1190, 1222-1223.) The declarations did contradict each other on a variety of details — with respect to where the conversation with the jurors took place, how many jurors spoke, and whether the jurors spoke to defense counsel. However, the mother did not specifically contradict the stepfather's statement that the jurors admitted having wondered out loud why, if defendant was innocent, he did not take the stand. She simply did not say (perhaps because she did not recall) whether this statement was made.

We therefore conclude that in the first appeal, we erred by remanding the case at all. Rather, we should have directed the trial court to hold an evidentiary hearing on defendant's motion for disclosure of jurors' identifying information. On the principle of "Better late than never," we will do so in this appeal.

17

## VI

## DISPOSITION

The judgment with respect to conviction is affirmed, subject to any motion for new trial that defendant may bring on remand. The judgment with respect to sentence is reversed, subject to the following conditions. On remand, the trial court must set an evidentiary hearing on defendant's motion for disclosure of jurors' identifying information. If it denies the motion, it shall reimpose the original sentence. If it grants the motion, it shall set a date for sentencing that will allow defendant a reasonable time to use the jurors' identifying information in determining whether to file and in filing a motion for new trial. If defendant fails to file a timely motion for new trial, or if defendant's new trial motion is denied, the trial court shall reimpose the original sentence. If defendant's new trial motion is granted, the trial court shall proceed accordingly.

CERTIFIED FOR PARTIAL PUBLICATION

RAMIREZ
P. J.

We concur:

MILLER
J.

CODRINGTON
J.

18