Filed 2/15/24  P. v. Sheppard CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B318179 |
| Plaintiff and Respondent, | Los Angeles County |
| v. | Super. Ct. No. BA474459 |
| CHARIS DEJUAN SHEPPARD, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mildred Escobedo, Judge.  Affirmed.

Edward H. Schulman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill, Supervising Deputy Attorney General, and David F. Glassman, Deputy Attorney General, for Plaintiff and Respondent.

————————————

Charis Dejuan Sheppard appeals his conviction for first-degree murder. He argues there was insufficient evidence to support the jury's finding of premeditation and deliberation and that the trial court erred in denying his motions to unseal identifying juror information and to proceed in pro per at his sentencing hearing. We affirm.

I

We recount the factual and procedural background.

Sheppard was best friends with Brad Brown. Sheppard had previously dated Brown's sister, Samantha, but Sheppard and Brown remained friends after that relationship ended. Sheppard had lived with Brown's family for a few months at one point. Sheppard and Brown sometimes argued, but the fights were never physical. LaDawn Reed, Brown's wife, and Carmalida Walker, Brown's step-daughter, had both known Sheppard for years.

On December 30, 2018, Sheppard picked Brown up, and the two went to lunch. Brown was unhappy with the way Sheppard was treating Sanicka Cummings, a woman with whom Sheppard had had a son. Brown expressed his displeasure to Sheppard.

Sheppard dropped Brown off at Brown's house in the early afternoon. The two men began communicating again via text and phone calls that evening around 6:00 p.m. That day through early the next morning the two exchanged 87 texts and phone calls, 73 of which originated from Brown's phone. Brown continued to admonish Sheppard for his treatment of Cummings. Brown also accused Sheppard of having an affair with Brown's wife, Reed.

Around 2:00 a.m., Brown was again arguing with Sheppard on the phone. Brown walked through his home with his phone on

2

speaker phone so Reed and Walker heard Sheppard's voice. Brown then walked outside, continuing the call.

Sheppard drove back to Brown's neighborhood, but parked his car around the corner from Brown's house.

Reed and Walker heard a loud boom from outside the house. They went out the front door to a gate from which they could see the driveway. They saw Brown crouching down next to his car, picking some papers off the ground. The driver's side door was open.

Sheppard had on a black ski mask and was wearing all black clothes.

Sheppard was standing next to Brown. Sheppard was holding a gun.

Brown sat in the driver's seat and closed the door, though the window was open. Sheppard told Reed something to the effect of, "LaDawn, you better get your husband. I never messed with you." Reed and Walker both recognized Sheppard's voice through the ski mask.

Reed replied that this was between the two men.

Sheppard said, "Leave my fucking family alone. I should smoke your ass. You lucky I know Sam [Brown's sister]." Sheppard reached in the open window with the hand not holding the gun and seemed to grab at something. He then stuck his gun through the open car window.

Sheppard shot Brown once in the chest.

Brown said, "Oh, he shot me, Dawny. Call 9-1-1." Sheppard ran down the driveway and away from the house. Video showed the car Sheppard had been driving that day speed away shortly after, running a stop sign.

Reed called the police. Brown was dead at the scene. Officers interviewed Reed, Walker, Reed's sons who had been in the house during the shooting, Samantha Brown, and a neighbor.

Sheppard fled to Carlsbad. A few days after the shooting, Sheppard stopped using his cell phone and started using a burner phone with a Las Vegas number. Police were able to track this number to an address in the Bay Area where they apprehended Sheppard about three weeks after the shooting.

An information charged Sheppard with the murder of Brown.

Sheppard denied any involvement in the shooting and repeatedly insisted to the police that he had not been there. He claimed his cell phone had been stolen.

At trial, Sheppard testified that he had lied to the police because he did not think they would believe him because he is Black.

Sheppard's account to the jury differed from what he told police.

Sheppard's trial testimony was that he had gone to talk to Brown because Brown kept talking about Sheppard's treatment of Cummings and accusing Sheppard of an affair with Brown's wife. He did not bring a gun. When Sheppard arrived, he spoke to Brown in the driveway. Brown got a beanie out of the trunk of his car, and then got in the driver's seat, leaving the door open. While Sheppard was talking to Brown, Reed and Walker came out. Sheppard asked Reed to confirm they were not having an affair. Reed responded that she "ain't got time for stuff like that." Brown pulled a gun out of the beanie and pointed it at Sheppard. Sheppard tried to knock the gun out of Brown's hand, but as he did so, the gun pointed at Brown and accidentally went

off.  Sheppard insisted he had not meant to kill Brown and had not brought a gun to the encounter.

During the second day of jury deliberations, defense counsel reported to the court that he had seen a juror speaking with an alternate juror in the hall after lunch.  The court questioned the juror who said she had not spoken about anything substantive with the alternate juror.  The court then spoke to the alternate juror who reported the juror had told him information about the subject of the deliberations.  After discussing with counsel, the court excused both the juror and alternate juror.  The court chose another alternate juror to join the jury and instructed the jury to begin deliberating again.

After a few hours, the jury sent the court a note saying the jury was unable to reach a unanimous verdict and that ten of the jurors agreed on first-degree murder and two agreed on second-degree murder.  The court brought the jury back into court and reminded them not to tell anyone how the vote stood unless asked by the court.  The court then told the jury to go home for the day and resume deliberating in the morning.  One juror moved his head and eyes.  The court questioned the juror who said he was tired.  In response to the court's question, he said he was able to continue.  Several jurors then asked for proof of continuing jury duty for their employers, and the court instructed them where to obtain the appropriate documents.

Defense counsel moved for a mistrial, citing the jury's ongoing violation of court orders and apparent fatigue.  The court denied the motion.

The next morning, after about two and a half more hours of deliberation, the jury reached a verdict.  The jury found Sheppard guilty of first-degree murder.

Defense counsel filed a motion to unseal juror information, arguing he needed it to provide evidence of juror misconduct to support a motion for mistrial. In support of his motion, he declared he had "reason to believe that an inquiry into the jurors' emotional response at being told to begin deliberating again, and whether or not those emotions caused them to rush their deliberations or pressure any of the other jurors might tend to increase the validity of Defendant's reasons for moving for a new trial." He declared he also had "reason to believe that the [dismissed] foreperson may have been the 'lone holdout' on the jury in favor of a not guilty verdict and that once she was removed the jury did not deliberate again but rushed into rendering a guilty verdict." At a hearing, the trial court denied the motion, finding the defense counsel had not provided any reason beyond speculation to believe juror misconduct had occurred.

At the sentencing hearing, which had been continued three times, defense counsel told the court Sheppard wanted to represent himself at the sentencing hearing. The court found the motion was untimely and denied it.

Sheppard appeals.

## II

Sheppard argues that insufficient evidence supported the conviction for first-degree murder, that the court should have unsealed juror information, and that he should have been allowed to represent himself at the sentencing hearing. We affirm.

## A

When considering Sheppard's claim about insufficient evidence, we review the record as a whole, considering the evidence and the inferences to be drawn in the light most

6

favorable to the verdict. (*People v. Manibusan* (2013) 58 Cal.4th 40, 87.)

A murder is of the first degree where the murder was premeditated and deliberate. (*People v. Morales* (2020) 10 Cal.5th 76, 88.) Our Supreme Court has identified three categories of evidence generally sufficient to support a finding of premeditation and deliberation: 1) planning activity, such as what and how the defendant did before the killing that show he directed his actions toward, and intended them to result in, the killing; 2) motive, including the defendant's relationship and conduct toward the victim from which a motive may be inferred, and 3) manner of killing, including the nature of the killing, such as how particular or exacting it was, from which the jury could infer the defendant must have intentionally killed in accordance with a preconceived design. (*People v. Anderson* (1968) 70 Cal.2d 15, 26-27.) These guidelines are not exhaustive or rigid. (*People v. Halvorsen* (2007) 42 Cal.4th 379, 420.)

Substantial evidence supported the jury's finding.

There was evidence of planning.

Wearing a ski mask, Sheppard parked around the corner from Brown's house at 2:00 a.m. with a loaded gun. He chose his attire to be all black clothing. Sheppard kept Brown on the phone but did not say, "I am coming to your house" or the like.

The jury was entitled to infer Sheppard had planned a fatal night ambush.

There was evidence of motive.

Brown had been aggravating Sheppard. Brown was continuously criticizing Sheppard about Cummings. Brown also was accusing Sheppard of having an affair with Brown's wife. Sheppard claimed there was no affair. Affair or no, Brown's

7

verbal assaults were aggravating Sheppard.  Aggravation is motive.

Sheppard points to other evidence in the record.  He argues he was wearing black clothes all day, not just when he came over in the dark, and speaking to Reed and Walker ensured he would be identified.  He testified Brown was the one with the gun, not him.  He argues there was no motive and in fact Brown was his best friend.  He testified the shooting was an accident, and he fled because he did not think the police would believe a Black man.  He did not call 911 because he had heard Walker tell Reed to do so and assumed she would.

We do not reweigh evidence.  (*Manibusan, supra*, 58 Cal.4th at p. 87.)  Our review is not whether the evidence could have supported a finding against premeditation and deliberation, but whether it did support such a finding.  (*Ibid*.)

The jury had an ample evidentiary foundation for its verdict.

B

Sheppard claims the trial court erred in denying his motion to unseal juror information.  A trial court should release juror contact information only where a party provides good cause to do so.  (Code Civ. Proc. § 237, subd. (b).)  Good cause requires a prima facie showing to support a reasonable belief that jury misconduct of a character likely to have influenced the verdict occurred.  (*People v. Cook* (2015) 236 Cal.App.4th 341, 345 (*Cook*).)

Sheppard did not provide good cause.

In support of the motion, defense counsel declared that he had "reason to believe that an inquiry into the jurors' emotional response at being told to begin deliberating again, and whether

or not those emotions caused them to rush their deliberations or pressure any of the other jurors might tend to increase the validity of Defendant's reasons for moving for a new trial." He declared he also had "reason to believe that the [dismissed] foreperson may have been the 'lone holdout' on the jury in favor of a not guilty verdict and that once she was removed the jury did not deliberate again but rushed into rendering a guilty verdict."

The trial court held a hearing and allowed counsel to argue. The court found that the basis for the motion was that the court had substituted jurors, and the jury came back with a verdict, in the defense's view, fairly quickly. The court found no evidence to support a reasonable belief sufficient to support a prima facie showing. Defense counsel offered only speculation. (*People v. Wilson* (1996) 43 Cal.App.4th 839, 852 [speculation about how verdict reached does not establish good cause].) The court also noted the new jury had deliberated for almost five hours over two days, a "substantial time."

Sheppard argues the court failed properly to consider that the new jury violated the court's order by reporting the vote and expressed fatigue, which suggested a rush to judgment. The transcript reflects that the court did consider these issues. The trial court's decision was not an abuse of discretion. (*Cook*, *supra*, 236 Cal.App.4th at p. 346.)

C

Sheppard argues the trial court improperly denied his motion to represent himself at his sentencing hearing. This argument errs.

Defendants have a constitutional right to defend themselves if they elect to do so in a timely, unequivocal, voluntary, knowing, and intelligent fashion. (*Faretta v.*

9

*California* (1975) 422 U.S. 806, 834-836.)  However, a defendant can lose this right through delay.  We leave untimely motions to the discretion of the judge.  (*People v. Windham* (1977) 19 Cal.3d 121, 124 (*Windham*).)

Sheppard waited until the day of his sentencing hearing, which had been continued three times, to make this motion.  The family was present to give their victim statements, which Sheppard knew the court had scheduled for that date.  Sheppard did not file a noticed motion, but informed the court of his request at the start of the hearing.  It was in the court's discretion whether to grant the motion.

The court's comments assure us the court based its decision on relevant factors.  Sheppard had ample opportunity to raise the issue before.  He knew family members had come to court to offer their statements.  The court rightly showed concern for purposeful delay and obstruction of the orderly administration of justice.  The decision to proceed as planned was not an abuse of discretion.

## DISPOSITION

We affirm the judgment.


WILEY, J.

We concur:


GRIMES, Acting P. J.          VIRAMONTES, J.

10