Filed 5/28/24  P. v. Williams CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

|  |  |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>DESMOND ALEJANDRO WILLIAMS,<br><br>        Defendant and Appellant. | D081830<br><br><br>(Super. Ct. No. SCD282741) |

APPEAL from a judgment of the Superior Court of San Diego County, Kimberlee A. Lagotta, Judge.  Affirmed.

Athena Shudde, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Natalia A. Cortina and Melissa Mandel, Deputy Attorneys General, for Plaintiff and Respondent.

MEMORANDUM OPINION[1]

Desmond Alejandro Williams fatally stabbed a man and was charged with second degree murder (Pen. Code, § 187, subd. (a)).  In April 2022, a jury acquitted him of the charge but convicted him on the lesser included offense of voluntary manslaughter (*id.*, § 192, subd. (a)) and found true he personally used a knife in the commission of the crime (*id.*, § 12022, subd. (b)(1)).  After the jury returned its verdicts and was discharged, attorneys from both sides spoke with some of the jurors in the hallway.  On the basis of this conversation, and nearly eight months later in December 2022, Williams filed a petition to obtain identifying information for the entire jury panel to investigate grounds for a new trial motion.  (Code Civ. Proc.,[2] §§ 206, 237)  The trial court denied the petition and subsequently sentenced Williams to seven years in state prison.  He appeals, asserting the court's denial of his petition was an abuse of discretion.  We affirm.

I.

*The Petition*

According to the supporting declaration of Williams's trial counsel, Giovanni G. Macias, seven members of the jury remained in the hallway after the panel was discharged.  They spoke with Macias, who was present with his investigator, a supervising deputy public defender, and a supervising investigator.  The trial prosecutor, Frederick Washington, was also present with his supervisor, David Grapilon.

This was the conversation as described by Macias:

---

[1]   This case is appropriate for resolution by memorandum opinion because it raises "no substantial issues of law or fact."  (Cal. Stds. Jud. Admin., § 8.1; see *People v. Garcia* (2002) 97 Cal.App.4th 847.)

[2]   Undesignated statutory references are to the Code of Civil Procedure.

2

"Juror 7 said that us [*sic*] that part of their decision to get to voluntary manslaughter was directly related to Williams not testifying during the trial. He explained that he really wanted Mr. Williams to express some type of explanation or remorse for what he did, and the fact that he did not was very important to his verdict. He said that if Williams showed remorse, he would have not even considered 1st or 2nd degree murder and he would have votes [*sic*] for full self-defense. He wanted to know if Williams has changed from this incident, had 'found God', or felt badly about what happened, because then he would have felt better about letting him out. This was especially important to him personally, because he lives in Pacific Beach and needed to know Mr. Williams would not be likely to stab juror #7 in the community. He needed to know if Mr. Williams was safe to be released, if he voted for full self-defense." (Original emphasis omitted.)

Grapilon "interjected and asked the juror questions to ensure that the [*sic*] received and followed the jury instructions. Other jurors (not Juror 7) added that the fact that Mr. Williams did not testify was still important because they only heard what was put into evidence from Williams, they focused on those statements more. Statements such as 'You're dead' at the moment of the incident, and the statement at the police station that was made regarding how a 'person run up on him had himself killed' had more emphasis and weight in deliberation because the jury did not hear from Williams in the trial."

Washington "asked the jury 'But you followed the law, right?' to which most jurors nodded in the affirmative, but #7 commented 'well as much as we could have.'"

On the strength of this conversation, Williams argued it was "inescapable" that the jury engaged in misconduct by considering his decision to not testify

and the fact of punishment.[3]  He sought the jury's identifying information to investigate grounds to support a motion for a new trial.

In opposition, the People submitted the declarations of the prosecutors, Washington and Grapilon[4].

Washington averred that he did not hear Juror 7 say " 'part of their decision to get to voluntary manslaughter was directly related to Williams not testifying during the trial,' " or that " 'if Williams showed remorse, he would have not even considered 1st or 2nd degree murder and he would have votes [*sic*] for full self-defense.' "  According to Washington, Juror 7 stated "that because the only things the jury heard from the defendant were all so terrible, they wanted something/anything to counter it . . . .  He then gave a non-exclusive list of examples of what he was referring to, which included evidence of remorse.  The other jurors agreed."  Washington understood "[a]ny reference of what would have led to a lesser included offense was part of a larger conversation around hypothetical beneficial evidence for [Williams]," including the examples Juror 7 had listed.  Toward the end of the conversation, Grapilon "asked very specific and pointed questions on whether or not the jurors followed the law and whether [Williams's] lack of testifying

---

[3]  On appeal, Williams has abandoned his contention the jury engaged in misconduct by considering the fact of punishment. We therefore do not discuss it further.

[4]  We summarize the People's opposition declarations for background. But like the Attorney General concedes, we assume for purposes of determining whether Williams made a prima facie showing of good cause the facts provided by Macias are true.  (See *People v. Johnson* (2015) 242 Cal.App.4th 1155, 1163 [normally a "prima facie showing" connotes an evidentiary showing that is made without regard to credibility].)  Accordingly, we disregard the prosecutors' statements that conflict with Macias's declaration.

4

impacted their verdict. The jurors all answered directly, indicating they followed the law and they did not use the fact that defendant did not testify against him."

Grapilon averred that Macias "was actively questioning the jurors" in the hallway. According to him, Juror 7 "said that they arrived at the guilty verdict because the evidence was clearly . . . against the defendant and that was what they were presented with. Juror 7 said words to the effect of he would have liked to have heard from the defendant to gauge whether he was remorseful or apologetic about the murder." Macias then asked Juror 7 "another question or two to determine if jurors inappropriately considered the defendant's 5th Amendment." Grapilon then asked Juror 7 "directly if he understood the jury instructions" and "specifically that they could not consider or use against [*sic*] the defendant's exercise of his right not to testify." Juror 7 replied "he understood that and that they did follow the law," adding that "it would have been nice . . . if they knew he was remorseful, but knew that it was not something they could actually factor into their verdict." "Juror 7 and the other jurors said they followed the law and did not factor defendant's exercise of his 5th Amendment right into their verdicts," and the other jurors nodded their heads in agreement. Grapilon further stated at the time of the conversation, "the courtroom staff was still inside and available for us to summon the judge." To his knowledge, "no one went back inside the courtroom to bring up these issues."

At a hearing in January 2023, the trial court denied the petition. It found based on all three attorney declarations that Juror 7 "mentioned certain things such as: He would have liked to have seen the defendant show remorse, he also would have liked to have heard more from the defendant regarding self-defense. [¶] But when pressed by all counsel, that juror--as

5

well as the balance of the jurors--agreed that he was able to follow the law and that he did decide the case on the evidence presented.  The other jurors were in agreement."  The court agreed with the People these statements demonstrated "the juror's subjective thought process as opposed to evidence of overt acts or statements that are objectively ascertainable that would lead [it] to believe that Juror Number 7 or any of the other jurors engaged in misconduct."  The court stated it had reached these findings "whether [the statements are] as indicated by defense counsel or as indicated by the two deputy DAs."  The court found Williams had not made a prima facie showing of misconduct and denied the petition for lack of good cause.

## II.

### *No Abuse of Discretion*

A " 'criminal defendant has neither a guaranty of posttrial access to jurors nor a right to question them about their guilt or penalty verdict.' " (*Townsel v. Superior Court* (1999) 20 Cal.4th 1084, 1092.)  "Strong public policies protect discharged jurors from improperly intrusive conduct in all cases.  The uncontrolled invasion of juror privacy following completion of service on a jury is, moreover, a substantial threat to the administration of justice.  These concerns, however, must be balanced with the equally weighty public policy that criminal defendants are entitled to jury verdicts untainted by prejudicial juror misconduct." (*Ibid.* [cleaned up].)  Thus "[a]bsent a showing of good cause for the release of the information, the public interest in the integrity of the jury system and the jurors' right to privacy outweighs the defendant's interest in disclosure." (*People v. McNally* (2015) 236 Cal.App.4th 1419, 1430.)  To this end, our Supreme Court has cautioned that requests for access to confidential juror records "should not be used as a

6

fishing expedition to search for possible misconduct." (*Id.* at p. 1431 [cleaned up], quoting *People v. Avila* (2006) 38 Cal.4th 491, 604.)

Juror identifying information is automatically sealed upon the recording of a verdict in a criminal case. (§ 237, subd. (a)(2).) A criminal defendant, however, may "petition the court for access to personal juror identifying information within the court's records necessary for the defendant to communicate with jurors for the purpose of developing a motion for new trial or any other lawful purpose." (§ 206, subd. (g).) "The petition shall be supported by a declaration that includes facts sufficient to establish good cause for the release of the juror's personal identifying information." (§ 237, subd. (b).)

To make this required showing of good cause, a defendant must set forth " 'a sufficient showing to support a reasonable belief that jury misconduct occurred.' " (*People v. Cook* (2015) 236 Cal.App.4th 341, 345.) "Good cause does not exist where the allegations of jury misconduct are speculative, conclusory, vague or unsupported." (*Id.* at p. 346.) The defendant does not need to introduce admissible evidence establishing that juror misconduct actually occurred, but he must convince the court "that talking to the jurors is *reasonably likely to produce admissible evidence* of juror misconduct." (*People v. Johnson* (2013) 222 Cal.App.4th 486, 493 (*Johnson*), italics added.)

Relevant here, Evidence Code section 1150 limits the type of evidence that may be used to attack the validity of a jury's verdict. It provides: "Upon inquiry as to the validity of a verdict, any otherwise admissible evidence may be received as to statements made, or conduct, conditions, or events occurring, either within or without the jury room, of such a character as is likely to have influenced the verdict improperly. No evidence is admissible to

7

show the effect of such statement, conduct, condition, or event upon a juror either in influencing him to assent to or dissent from the verdict or concerning the mental processes by which it was determined." (Evid. Code, § 1150, subd. (a).) "[E]vidence that violates Evidence Code section 1150 is not merely inadmissible; it is irrelevant—'of no jural consequence.'" (*Johnson, supra*, 222 Cal.App.4th at p. 494.)

"This statute distinguishes between proof of overt acts, objectively ascertainable, and proof of the subjective reasoning processes of the individual juror, which can be neither corroborated nor disproved. This limitation prevents one juror from upsetting a verdict of the whole jury by impugning his own or his fellow jurors' mental processes or reasons for assent or dissent. The only improper influences that may be proved under Evidence Code section 1150 to impeach a verdict, therefore, are those open to sight, hearing, and the other senses and thus subject to corroboration." (*People v. Steele* (2002) 27 Cal.4th 1230, 1261 [cleaned up].)

We review a denial of a petition for disclosure of juror identifying information for abuse of discretion. (*People v. Jones* (1998) 17 Cal.4th 279, 317.) We conclude the trial court did not abuse its discretion in denying Williams's petition.

In his opening brief on appeal, Williams asserts Macias's declaration established that the jury "discussed" his failure to testify and "that failure affected the jury's decision." This misstates the evidence. Although Juror 7 stated "part of their decision to get to voluntary manslaughter was directly related to Williams not testifying during the trial," nowhere does Juror 7 state he or the other jurors *discussed* during their deliberations the fact Williams did not testify. Instead, Macias's declaration established that Juror 7 "really wanted" Williams to "express some type of explanation or remorse

8

for what he did, and the fact that he did not was very important to his verdict"; and Juror 7 "wanted to know" if Williams had found God and felt remorse. The other jurors, according to Macias's declaration, also did not state they *discussed* Williams's decision to not testify.

Evidence of " 'a jury discussion on an improper topic' " is admissible as an overt act of juror misconduct provided the evidence is not directed to the subjective reasoning processes of the individual juror. (*People v. Hord* (1993) 15 Cal.App.4th 711, 725.) Here, despite being questioned by both sides immediately after their verdicts, no juror stated there was a discussion of an improper topic in the jury room. Indeed, the jury was instructed with CALCRIM No. 355 to "not consider, for any reason at all, the fact that the defendant did not testify" and to "not discuss that fact" during their deliberations "or let it influence" their decision in any way. And Macias's declaration established the jurors agreed they followed the law. Even Juror 7's comment that they did so " 'as much as [they] could have' " is an affirmation the jurors did not disregard the law.

At best, Macias's declaration established the jurors' personal, after-the-fact desire to hear the defendant testify. That does not constitute prejudicial juror misconduct. (See *People v. Loker* (2008) 44 Cal.4th 691, 749 ["It is natural for jurors to wonder about a defendant's absence from the witness stand."]; *People v. Avila* (2009) 46 Cal.4th 680, 727 [" 'Transitory comments of wonderment and curiosity' about a defendant's failure to testify, although technically misconduct, 'are normally innocuous, particularly when a comment stands alone without any further discussion.' "].)

For these reasons, the trial court was within its discretion to conclude that talking further with the jurors was not reasonably likely to produce admissible evidence of juror misconduct. As such, the trial court did not

9

abuse its discretion by concluding Williams failed to make a sufficient showing to support a reasonable belief that jury misconduct occurred and good cause did not exist to override the jurors' privacy rights. The petition was properly denied.

III.

*Disposition*

The judgment is affirmed.


DO, J.

WE CONCUR:


O'ROURKE, Acting P. J.


IRION, J.