Filed 3/30/21  P. v. Valdivia CA2/8
(unmodified opinion attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. HECTOR ISMAEL VALDIVIA, Defendant and Appellant. | B302201 (Los Angeles County Super. Ct. No.  BA225456) ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING [NO CHANGE IN JUDGMENT] |

THE COURT:

Good cause appearing, the non-published opinion in the above entitled matter, filed on March 12, 2021, is hereby modified as follows:

On page 21 of the opinion, this Court cites to *People v. Rodriguez* as follows:

> (*Rodriguez*, *supra*, 56 Cal.App.5th at pp. 243–244 [the court's responsibility is to act as independent fact finder and determine whether the evidence establishes petitioner would be guilty of murder under amended section 188 and 189 and is thus ineligible for resentencing under section1170.95, subdivision (d)(3)].)

This citation should be changed as follows:

> (*Rodriguez*, *supra*, 58 Cal.App.5th at pp. 243–244 [the court's responsibility is to act as independent fact finder and determine whether the evidence establishes petitioner would be guilty of murder under amended section 188 and 189 and is thus ineligible for resentencing under section1170.95, subdivision (d)(3)].)

The petition for rehearing is denied.

[There is no change in the judgment.]

_____

GRIMES, Acting P. J.          STRATTON, J.          WILEY, J.

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>HECTOR ISMAEL VALDIVIA,<br><br>Defendant and Appellant. | B302201<br><br>(Los Angeles County<br>Super. Ct. No.  BA225456) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Charlaine F. Olmedo, Judge.  Reversed.

Jonathan E. Demson, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Daniel C. Chang, Deputy Attorneys General, for Plaintiff and Respondent.

In 2002, a jury found appellant Hector Ismael Valdivia guilty of first degree murder with a true finding that a principal discharged a firearm resulting in death. The jury hung on allegations that appellant had personally discharged a firearm resulting in death, personally discharged a firearm, and personally used a firearm. The trial court later granted the People's motion to dismiss those allegations. Appellant was sentenced to 25 years to life in prison.

In 2019, appellant filed a petition for resentencing under newly enacted Penal Code section 1170.95.[1] Section 1170.95 implements Senate Bill No. 1437 which, among other things, eliminated the natural and probable consequences doctrine as a theory of liability for murder. Section 1170.95 allows a court to resentence a convicted murderer if the court ultimately finds he or she was convicted under a natural and probable consequences theory of liability and the People have failed to prove, beyond a reasonable doubt, that petitioner is currently guilty of murder notwithstanding elimination of that doctrine. Without issuing an order to show cause or holding an evidentiary hearing, the trial court denied Valdivia's petition, finding that his murder conviction did not rest upon the now discarded theory of liability.

The question presented is whether Valdivia made a prima facie showing that he is "entitled to relief" under section 1170.95, subdivision (c), and is therefore entitled to the issuance of an order to show cause and a possible evidentiary hearing where the People would have the burden of proving beyond a reasonable doubt that Valdivia is ineligible for resentencing.

---

[1] All undesignated statutory references are to the Penal Code.

We reverse the order denying the petition. We find Valdivia made the necessary prima facie showing and, in denying the petition, the trial court made a mistake of law and improperly determined facts that were not "readily ascertainable" from the record. The matter is remanded with directions to the trial court to issue an order to show cause and to hold an evidentiary hearing as set out in section 1170.95, subdivision (d).

## STANDARD OF REVIEW

Our review of the trial court's interpretation of Senate Bill No. 1437 is independent. (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 328, fn. 8, review granted Mar. 18, 2020, S260493 (*Verdugo*).

## FACTUAL AND PROCEDURAL BACKGROUND

We take these facts, as do the parties in their briefing, from the appellate opinion affirming Valdivia's murder conviction. (*People v. Valdivia* (Feb. 20, 2004, B163501) [nonpub. opn.].)[2] On September 3, 2001, Geovani Monterroza was killed by a single gunshot. Earlier in the day, he and his friend Oscar Romero had been repeatedly followed and chased by men in a black car. Eventually, Monterroza, Romero, and their friend Ulysses Estrada threw rocks at the pursuing car. Monterroza's rock broke a window in the car. At a party that afternoon, Valdivia showed his friends Jose Salas and Gabriel Alonso his shattered car window. Valdivia was angry and told them Monterroza had broken his window. Valdivia borrowed Alonso's gun, which was

---

[2] On May 27, 2020, we granted appellant's request to take judicial notice of the unpublished opinion. On August 26, 2020, we granted the People's same request.

3

fully loaded, and left the party with Salas and Jerry Luengas. Salas knew they were looking for Monterroza. At some point, Valdivia said he saw "him" and jumped out of the car. Salas saw Valdivia aim. Salas heard a single shot, but he did not see Monterroza. Valdivia returned to the car and the men returned to the party. Alonso's gun was missing one bullet when Valdivia returned it to him. Later that evening, Valdivia told Alonso he had shot Monterroza. The police recovered the gun Alonso had lent Valdivia and matched it to a casing found not far from Monterroza's body.

Appellant went to trial on the sole charge of first degree murder and allegations that a principal discharged a firearm resulting in death and that he personally discharged a firearm resulting in death, personally discharged a firearm, and personally used a firearm. His defense at trial was that Jose Salas, another of the individuals at the crime scene, committed the murder and, Salas, along with Alonso, concocted a story blaming the murder on him.

In arguing at trial that appellant should be convicted of first degree murder, the People relied on three theories of liability. (*People v. Valdivia, supra*, B163501 at pp. *2–3.) The People argued: "In this case there's two ways at least, if not three ways, that the defendant can be convicted of murder in this case. [¶] One is he is the direct perpetrator, which all of the evidence points to, another is that he is an aider and abettor, he went along with the others for the purposes of murdering but somebody else actually did it, and, third, that's called the natural and probable consequences theory. Maybe they didn't all go to commit the murder. Maybe they went to beat him up or to [scare] him with a gun, put the fear of God in him, or whatever

4

their mind was all about.  They went to beat him up, assault him or scare the living daylights out of him.  [¶] Well, the natural [and] probable consequences of that behavior is that somebody might die if you do that silly, stupid thing.  And even if you didn't go there intended to do the murder but you went intended to do that, you're guilty of murder if that happens."

The People continued: "Now, again we talked briefly about natural and probable consequences.  And when you go to think about Jose Salas, Gabriel Alonso and the defendant, you have to ask yourself when you go looking for somebody that you claim you only want to beat up or assault, and you take a gun with you, what is the natural and probable consequence?  Is it a natural and probable consequence that a death may follow?  [¶] Now, a natural and probable consequence is a consequence that is within the normal range of outcomes that might be reasonably expected to occur.  Especially when you take a gun.  It's not based on what these guys, Jose Salas and Gabriel Alonso or the defendant Hector Valdivia intended or expected.  It's based on what a person of reasonable and ordinary prudence would expect."

The first theory—that appellant was the actual shooter who killed the victim—required the jury to find that appellant's actions were willful, deliberate, and premediated and that he acted with malice aforethought in killing the victim.  The second theory—that appellant aided and abetted the actual shooter in the commission of the crime—also required the jury to find that appellant willfully acted with malice, premeditation, deliberation, and an intent to kill.  The third theory based on the natural and probable consequences doctrine—that appellant intended to aid and abet a different crime (assault), but instead a murder resulted—did not require the jury to find that appellant acted

5

with malice or an intent to kill. It required that the jury find only that appellant intended to aid and abet the actual shooter, whomever he was, in committing an assault or battery and Monterroza's murder was a natural and probable consequence of his participation in that other crime. (See Couzens, Accomplice Liability for Murder (SB 1437) (Apr. 2019), at pp. 5–7 [elements of murder, aider and abettor liability, natural and probable consequences doctrine]; *People v. Chiu* (2014) 59 Cal.4th 155, 161 (*Chiu*), superseded by statute on another ground as stated in *People v. Gentile* (2020) 10 Cal.5th 830 (*Gentile*).)

The trial court instructed the jury on all three theories: appellant as the actual shooter; appellant as aiding and abetting murder committed by the actual shooter; and appellant as aiding and abetting the different crimes of assault or battery resulting in the murder as a natural and probable consequence of those crimes.

The jury convicted appellant of first degree murder, but we do not know, of course, which theory the jury adopted as the basis of liability for murder.

## THE RESENTENCING PETITION

On February 28, 2019, appellant filed a petition for resentencing, pursuant to section 1170.95. His petition was apparently facially sufficient as the trial court appointed counsel for appellant on May 2, 2019. Both parties filed several briefs. The People took the position that the jury convicted appellant as the actual shooter only and did not rely on the natural and probable consequences doctrine. They argued the "factual evidence adduced at the trial, and the Appellate Court's summary of the facts and explicit and conclusive opinion, all establish that the Petitioner was the actual killer, and, therefore,

6

the defen[dant] has not established a sufficient prima facie showing that would warrant a hearing or relief. The facts . . . show that the Petitioner was the actual killer . . . and the petition should be summarily denied."

On October 9, 2019, the trial court denied the petition. There is no written ruling. Orally the court recited the facts as stated in our appellate opinion and then stated: "So with the settled facts here, looking at that, clearly the inference was that the defendant was the shooter as the People argued to the jury. And the jury hung on the issue of the personal use of the firearm. However, the jury finding here was willful, deliberate and premeditated murder[,] and under an aiding and abetting theory, to find him guilty of that, they would also to have found the specific intent to kill. . . . [¶] . . . [¶] So the jury finding of first degree murder is a finding by the jury that the defendant harbored the express malice, and therefore, he is not entitled to the relief under [sections] 1437 and 1170.95." "[T]he court finds that Mr. Valdivia has not met a prima facie showing here justifying the issuance of the order to show cause. Based upon what I have indicated earlier, the jury necessarily found that the defendant harbored express malice in finding him guilty of first degree murder. [¶] While the court instructed on the natural and [probable] consequences theory, it's clear to this court that the jury did not find the defendant guilty under this theory. . . . [Y]es, finding the personal use of the firearm true would mean that he was the actual shooter as a finding by the jury, the court feels that the finding of the first degree murder, the willful, deliberate and premeditated, necessarily negates the findings of a natural and foreseeable consequence." The court later went on to say, "Natural and probable consequence doesn't apply to first

7

degree murder.  The finding of first degree murder is a finding of express malice."

## DISCUSSION

## I.      The Ultimate Theory of Prosecution for Murder Was Under Either a Theory of Express Malice or the Natural and Probable Consequences Doctrine.

A.      *Liability for Murder*

Traditionally, a defendant is culpable of murder when either the defendant or an accomplice proximately causes an unlawful death and the defendant personally acts with malice aforethought.  First degree murder is committed with malice aforethought, but with the additional elements of willfulness premeditation and deliberation.  (*People v. Knoller* (2007) 41 Cal.4th 139, 151.)

Malice may be express or implied.  It is express when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature.  It is implied when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart.  (§ 188.) Express malice requires an intent to kill, but implied malice does not. (*People v. Soto* (2018) 4 Cal.5th 968, 970.)  Nonetheless, before Senate Bill No. 1437 and *Chiu, supra*, 59 Cal.4th at p. 161, a defendant could be convicted of first degree murder without proof of express or implied malice by resort to the theory of felony murder (which is not implicated here so we do not address it) or the natural and probable consequences doctrine (which we discuss next).

8

The natural and probable consequences doctrine permitted a conviction for murder even when there is no proof of express or implied malice. (CALCRIM No. 402; see generally *Chiu, supra,* 59 Cal.4th at p. 161; *id.* at pp. 171–172 (conc. & dis. opn. of Kennard, J.) [indirect liability of the aider and abettor under the natural and probable consequences doctrine requires a five-step process: the jury must find that the defendant (1) with knowledge of a confederate's unlawful purpose; (2) with the intent of committing, encouraging, or facilitating the commission of any target crimes; (3) aided, promoted, encouraged, or instigated the commission of the target crimes; (4) the defendant's confederate committed an offense other than the target crimes; and (5) the offense committed by the confederate was a natural and probable consequence of the target crimes that the defendant encouraged or facilitated].) The natural and probable consequences doctrine imposed liability for criminal harms the defendant naturally, probably, and foreseeably put in motion. The doctrine is not a theory of malice; the means rea of the aider and abettor with respect to the murder is irrelevant. (*Gentile, supra,* 10 Cal.5th at p. 847; *People v. Lee* (2020) 49 Cal.App.5th 254, 261, review granted July 15, 2020, S262459 (*Lee*).)

The doctrine imposed liability on "a person who aids and abets a confederate in the commission of a criminal act . . . not only for that crime (the target crime), but also for any other offense (nontarget crime)"—including murder—"committed by the confederate as a 'natural and probable consequence' of the crime originally aided and abetted." (*People v. Prettyman* (1996) 14 Cal.4th 248, 254; *Gentile, supra,* 10 Cal.5th at. p. 843.) " 'Because the nontarget offense [was] unintended, the mens rea

9

of the aider and abettor with respect to that offense [was] irrelevant and culpability [was] imposed simply because the person could have foreseen the commission of the nontarget crime.' " (*Chiu, supra,* 59 Cal.4th at p. 164.)

In 2014, *Chiu* changed the landscape with respect to applying the natural and probable consequences doctrine to prove first degree murder. The *Chiu* court held that an aider and abettor cannot be convicted of premeditated first degree murder under the natural and probable consequences theory. (*Chiu, supra,* 59 Cal.4th at p. 161.) However, when appellant was convicted in 2002, the People were permitted to prove culpability for first degree murder by using this doctrine. (*Id.* at pp. 161, 166.)

B.    *Senate Bill No. 1437*

In 2019, the amendments enacted by Senate Bill No. 1437 totally eliminated liability for all degrees of murder under the natural and probable consequences doctrine. It did so by amending section 188, which now provides, "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) After Senate Bill No. 1437, a defendant cannot be convicted of murder absent proof of malice, with an exception inapplicable here involving felony murder. (§ 189, subd. (e); *Lee, supra,* 49 Cal.App.5th at p. 262, review granted.) Senate Bill No. 1437 did not redefine the element of malice; it merely eliminated the option of convicting a defendant of murder without a showing of malice.

10

More specifically the Legislature itself has stated that by amending sections 188 (defining malice) and 189 (defining the degree of murder), Senate Bill No. 1437 changed the "the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).)

C. *Section 1170.95*

When the Legislature decided to abolish the natural and probable consequences doctrine as a basis for liability for murder, it provided a specific procedure by which to examine prior murder convictions to determine if a defendant was convicted of murder under that doctrine and whether he is now ineligible for relief. (§ 1170.95.) The procedure is relatively straightforward. Section 1170.95 allows a felon convicted of murder under the natural and probable consequences doctrine to "file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply: [¶] (1) A complaint, information or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine. [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted of first degree or second degree murder. [¶] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January

11

1, 2019." (§ 1170.95, subd. (a).) The petition must contain basic identifying information and be filed with the court that sentenced the petitioner. (*Id.*, subd. (b)(1).)

Once the petition is filed, the trial court's review begins. First, section 1170.95, subdivision (b)(2) provides that the trial court may deny the petition without prejudice if any of the information required by subdivision (b)(1) is missing and cannot be readily ascertained by the court.

After a petition has been filed that includes all required information, the next step is set out in section 1170.95, subdivision (c). "The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls *within the provisions of this section.* If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner. The prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner may file and serve a reply within 30 days after the prosecutor response is served. . . . If the petitioner makes a prima facie showing that he or she is *entitled to relief*, the court shall issue an order to show cause." (§ 1170.95, subd. (c), italics added.) Thus, subdivision (c) compels the resentencing court to make two prima facie determinations. The first is whether petitioner has made a prima facie showing that he or she falls within the provisions of the section. If that showing is made, the trial court then appoints counsel and orders briefing. After briefing, the trial court rules on the second prima facie showing that petitioner must make, to wit, that he or she is entitled to relief under the statute.

12

If the second prima facie showing has been made, the court issues an order to show cause and sets up an evidentiary hearing where the burden is on the People to show beyond a reasonable doubt that the petitioner is ineligible for resentencing.  At that evidentiary stage, the prosecutor and the petitioner "may rely on the record of conviction or offer new or additional evidence to meet their respective burdens."  (§ 1170.95, subd. (d)(3).)

Thus, section 1170.95, subdivision (c) describes a chronological sequence of actions, the order of which must be respected.  (*People v. Nunez* (2020) 57 Cal.App.5th 78, 87, review granted Jan. 13, 2021, S265918 [sequential structure of a statutory scheme supports interpretation that acts required by statutes occur in the same sequence].)  This sequence includes two stages in which the court undertakes a prima facie review— one review takes place before briefing and one after.  Before briefing, the court determines whether petitioner has made a prima facie showing that he or she " 'falls within the provisions' " of the statute.  This initial review thus determines the facial sufficiency of the petition.  (*Verdugo, supra,* 44 Cal.App.5th at pp. 327–328, review granted.)  The court's role at this stage is simply to decide whether the petitioner is ineligible for relief as a matter of law, making all factual inferences in favor of the petitioner.  (*Id*. at p. 329.)

If the petition is facially sufficient, the second review occurs after appointment of counsel and submission of written briefs.  Here the court determines whether petitioner has made a prima facie showing that he or she is entitled to relief.  (*People v. Lewis* (2020) 43 Cal.App.5th 1128, 1140, review granted Mar. 18, 2020, S260598.)  The second prima facie review is the subject of this appeal as the trial court appointed counsel for appellant and

13

ordered briefing. At the second prima facie review, the trial court does not evaluate the credibility of the petitioner's assertions, but it need not credit factual assertions that are untrue as a matter of law. (*People v. Drayton* (2020) 47 Cal.App.5th 965, 980 (*Drayton*).) The court's authority to make determinations without conducting an evidentiary hearing pursuant to section 1170.95, subdivision (d) is limited to "readily ascertainable" facts from the record of conviction (such as the crime of conviction) rather than factfinding involving the weighing of evidence or the exercise of discretion (such as determining whether petitioner showed reckless indifference to human life in the commission of the crime). (*Ibid.*) The court need not credit factual assertions that are untrue as a matter of law—for example, a petitioner's assertion that a particular conviction is eligible for relief where section 1170.95 does not list the crime as eligible. Just as in habeas corpus, if the record contains facts refuting the allegations made in the petition, the court is justified in making a determination adverse to the petitioner. Thus, at any stage prior to the evidentiary hearing in subdivision (d), the information the trial court may rely upon is limited to that which is readily ascertainable from the record of conviction. To deny the petition at this second stage, the court must find a petitioner "necessarily" ineligible as a matter of law. (*Ibid.*)

Here the trial court denied the petition at the second stage of review after finding that Valdivia had not made a prima facie showing that he was entitled to relief. The trial court found that the jury, in convicting appellant of first degree murder, had "necessarily" found he had acted with express malice and therefore did not rely on the natural and probable consequences doctrine to establish culpability. The court concluded this finding

14

of express malice meant that appellant, as a matter of law, had failed to make a prima facie showing that he was entitled to relief under the statute. The trial court's premise was erroneous as a matter of law and so we reverse.

II. **Appellant Made a Prima Facie Showing That He Was Convicted of First Degree Murder Under the Natural and Probable Consequences Doctrine.**

Valdivia's burden at the second subdivision (c) stage was to make a prima facie showing that he was entitled to relief under the statute. Prima facie evidence is that which suffices for the proof of a particular fact, until contradicted and overcome by other evidence. Prima facie evidence is not conclusive evidence; it simply denotes that the evidence may suffice as proof of fact until or unless contradicted and overcome by other evidence. (*Estate of Woodson* (1939) 36 Cal.App.2d 77, 80.) "Normally . . . a 'prima facie showing' connotes an evidentiary showing that is made without regard to credibility. . . . [¶] This is particularly true when [as here] the prima facie showing merely triggers an evidentiary hearing, at which any necessary credibility determinations can still be made." (*People v. Johnson* (2015) 242 Cal.App.4th 1155, 1163.)

In determining whether a party has made a prima facie showing, " 'the court may not weigh the evidence or consider the credibility of witnesses. Instead, the evidence most favorable to [the party] must be accepted as true and conflicting evidence must be disregarded. The court must give "to the [party's] evidence all the value to which it is legally entitled, . . . indulging every legitimate inference which may be drawn from the evidence in [the party's] favor . . . ." ' " (*Stanley v. Richmond* (1995) 35 Cal.App.4th 1070, 1086.) "Prima facie evidence . . . may be

15

slight evidence which creates a reasonable inference of fact sought to be established but need not eliminate all contrary inferences." (*Evans v. Paye* (1995) 32 Cal.App.4th 265, 280–281, fn. 13, and authorities therein cited; see *Jenni Rivera Enterprises, LLC v. Latin World Entertainment Holdings, Inc.* (2019) 36 Cal.App.5th 766, 781.)  This is so even if there could be other inferences as well.  (*Reaugh v. Cudahy Packing Co.* (1922) 189 Cal. 335, 339.)

In denying the petition, the trial court found the jury made a finding of express malice, because, at the time of his trial, appellant could not be convicted of first degree murder under the natural and probable consequences doctrine.  This is not correct.  It was only after the 2014 holding in *Chiu* that defendants could not be convicted of first degree murder under the natural and probable consequences theory.  (*Chiu, supra*, 59 Cal.4th at p. 166.)  Prior to 2014, the doctrine was available as a theory to convict defendants of first degree murder.  Thus, the jury could have found appellant guilty under any of the three theories proposed by the People at his trial.  (The People do not dispute that they argued natural and probable consequences as one of their three theories of liability.)

Because it is impossible to know under which theory appellant was convicted, we cannot say that "readily ascertainable facts" make it certain as a matter of law that appellant was necessarily convicted under a theory of express malice.  This is especially so because the jury hung on the allegation that appellant personally discharged a firearm which resulted in death.  This means at least some of the jurors concluded appellant was not the actual shooter and believed him to be guilty as an aider and abettor with express malice or as an

16

aider and abettor under the natural and probable consequences doctrine. Without a finding on the allegations it is not possible to say "as a matter of law" that appellant was "necessarily" convicted of being the shooter. The issue of whether he personally discharged a firearm resulting in death was just not decided. Thus, based on the jury's inability to reach a verdict on the personal use and discharge allegations, it is safe to infer that the jury as a group necessarily did not conclude appellant was the actual shooter. This suggests that the natural and probable consequences theory was the most likely basis for the jury's verdict of first degree murder. At the very least, it constitutes a prima face case for entitlement to relief.

Moreover, in finding that the jury necessarily made a finding of express malice, rendering superfluous the natural and probable consequences doctrine, the trial court engaged in factfinding not appropriate at this stage of the proceedings. (*Drayton*, *supra*, 47 Cal.App.5th at p. 980 [the court's authority to make determinations without conducting an evidentiary hearing pursuant to section 1170.95, subd. (d) is limited to readily ascertainable facts from the record (such as the crime of conviction), rather than factfinding involving the weighing of evidence or the exercise of discretion (such as determining whether the petitioner showed reckless indifference to human life in the commission of the crime)].) Permitting the trial court to pick and choose the parts of the trial testimony it believes and disbelieves—factfinding—disables the low burden the Legislature placed on petitioners who need to make only a prima facie showing to obtain an order to show cause and evidentiary hearing. After all, every defendant who petitions the court for relief has admitted to murder by entering a plea or has been

17

convicted of murder at a trial where evidence was adduced in support of the conviction.  Each has had that conviction affirmed on appeal in opinions that state the facts in the light most favorable to the judgment.  Foreclosing the possibility that appellant made a prima facie showing by factfinding, that is, crediting some evidence and discarding other evidence, deprives the petitioner of the ease with which the Legislature wanted these cases returned to court for evidentiary hearings where the People would have to prove beyond a reasonable doubt that a petitioner is ineligible for relief.  Only by limiting the prima facie review to consideration of facts that preclude eligibility *as a matter of law* do we promote the Legislature's intent that every defendant convicted of murder at a trial where the natural and probable consequences doctrine excused the People from proving malice is given a new hearing where malice must now be proven beyond a reasonable doubt.  (*People v. Rodriguez* (2020) 58 Cal.App.5th 227, 243–244 (*Rodriguez*) [statutory language of section 1170.95 indicates the court is to determine whether petitioner would now be convicted of murder, not whether he was, in fact, convicted of murder under a still-valid theory].)

Significantly, on appeal the People do not argue that the trial court correctly construed the law or acted properly in finding facts.  Instead, the People rely on an argument raised for the first time on appeal—that the trial court's instruction to the jury incorrectly stated the law on the issue of natural and probable consequences.  The People's position, for the first time in 18 years, is that the instruction, instead of describing the target crime as assault and battery (as was discussed in chambers between court and counsel), misstated the target crime as the murder itself.

18

Our decision on direct appeal sets out the instruction and indeed one sentence describes the target crime as murder. However, neither court nor counsel then raised the issue; perhaps no one caught it.  Instead, appellant's issue on appeal was that the instructions on natural and probable consequences were inappropriate because the target crime of assault was a misdemeanor, not a felony.  We held that the doctrine of natural and probable consequences was applicable in this case, notwithstanding that the target offense posited by the People was a misdemeanor assault.

The People now argue appellant could not have been convicted of murder under the natural and probable consequences doctrine because it was incorrectly presented to the jury.  They argue because the instruction (CALJIC 3.02) described the target crime as murder, it in effect was simply a second instruction on direct aiding and abetting, so that the jury "necessarily" found appellant guilty of direct aiding and abetting.

We disagree with the People's premise.  Inexplicably, this issue is being raised for the first time on appeal and we conclude it is forfeited.  (*Truck Insurance Exchange v. AMCO Ins. Co.* (2020) 56 Cal.App.5th 619, 635 [it is fundamental that a reviewing court will ordinary not consider claims made for the first time on appeal which could have been but were not presented to the trial court].)  However, if we were to review the claim, we would find it without merit.

As a reviewing court, we review the instructions as a whole. (*People v. Lewis* (2001) 25 Cal.4th 610, 649.)  At the end of the same instruction, the trial court correctly stated the target crime as assault or battery:  "[Y]ou must be satisfied beyond a reasonable doubt that:  [¶] . . . [¶]  (4) the crime of murder was a

19

natural and probable consequence of the commission of the crimes of assault and/or battery." The jury was also instructed: "You are not required to unanimously agree as to which originally contemplated crime the defendant aided and abetted, as long as you are satisfied beyond a reasonable doubt and unanimously agree that the defendant aided and abetted the commission of an identified and defined target crime and that the crime of murder was a natural and probable consequence of the commission of that targeted crime. [¶] Whether a consequence is 'natural and probable' is an objective test based not on what the defendant actually intended, but on what a person of reasonable and ordinary prudence would have expected likely to occur. The issue is to be decided in light of all of the circumstances surrounding the incident. [¶] A 'natural consequence,' is one which is within the normal range of outcomes that may be reasonably expected to occur if nothing unusual has intervened. [¶] 'Probable' means likely to happen."

Critically, the People's post-instruction closing argument, as set out above, succinctly and correctly advised the jury it could find appellant guilty of first degree murder under the natural and probable consequences doctrine if his intention was simply to "beat him up", not kill, but the murder occurred anyway as a natural consequence of the assault.

Even if this argument is not forfeited we conclude that one misstated word situated among correct instructions bolstered by the People's clear explanation did not remove the doctrine of natural and probable consequence from the jury's purview. In this regard we distinguish *People v. Butler* (2009) 46 Cal.4th 847, 870–871 where our Supreme Court considered similarly transposed language misstating the charged crime as the target

20

crime under a natural and probable consequences theory. There the court briefly and quickly dispatched the prejudicial effect of the erroneous instruction without considering the instructions as a whole. Where, as here, there were other correct instructions followed by correct argument by counsel, we conclude the instruction does not lead to the conclusion that the jury found express malice as a matter of law.

III. **On Remand, the Trial Court Shall Determine at an Evidentiary Hearing Whether the People Have Proven Beyond a Reasonable Doubt That Appellant Is Guilty of the Crime Charged Under Current Law.**

Because we are sending this back to the trial court for an evidentiary hearing, we remind the trial court that it is obliged to make a finding whether the People have proven appellant guilty beyond a reasonable doubt under current law. The issue is not what the jury may or could have found at the original trial. The parties may submit on the trial transcript and/or elect to offer additional and new evidence on the issue of guilt. (See § 1170.95, subd. (d).) But the ultimate issue for the court to decide is whether, on the state of the evidence presented at the evidentiary hearing, appellant has been proven guilty beyond a reasonable doubt under the law as it presently stands. (*Rodriguez, supra*, 56 Cal.App.5th at pp. 243–244 [the court's responsibility is to act as independent fact finder and determine whether the evidence establishes petitioner would be guilty of murder under amended section 188 and 189 and is thus ineligible for resentencing under section1170.95, subdivision (d)(3)].)

## DISPOSITION

The order denying the petition is reversed. The petition is remanded to the trial court with directions to issue an order to show cause and set an evidentiary hearing in accordance with section 1170.95, subdivision (d).

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


STRATTON, J.

We concur:



GRIMES, Acting, P. J.



WILEY, J.

22