Filed 9/15/21  P. v. Porter CA4/2

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E074841 |
| v. | (Super.Ct.No. RIF1601045) |
| DEVIN JUWAN PORTER, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  L. Jackson Lucky IV, Judge.  Affirmed.

Matthew A. Siroka, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland, Scott C. Taylor and James H. Flaherty, Deputy Attorneys General, for Plaintiff and Respondent.

1

On February 20, 2016, defendant and appellant Devin Juwan Porter shot Marcos N. (the victim) following a verbal argument. On November 28, 2018, a jury convicted defendant of attempted first degree murder. (Pen. Code,[1] §§ 664, 187, subd. (a).) The jury also found true allegations that he personally and intentionally discharged a firearm and caused great bodily injury (§§ 12022.53, subd. (d), 1192.7, subd. (c)(8)) and personally inflicted great bodily injury (§§ 12022.7, subd. (a), 1192.7, subd. (c)(8)). The trial court sentenced defendant to state prison for a total term of 32 years to life. On appeal, he contends there is insufficient evidence to support the jury's finding of premeditation and deliberation. He further argues that the trial court abused its discretion by (1) refusing to disclose personal juror identifying information and (2) imposing a 25-year-to-life sentence for the firearm enhancement. We affirm.

## I. PROCEDURAL BACKGROUND AND FACTS

### A. The Prosecution's Case.

Around 1:00 p.m., on February 20, 2016, the victim was standing outside a smoke/tobacco shop, when a car pulled up. Defendant got out of the car and walked up to another car (a Chevy Impala), which was parked near where the victim was standing. Defendant said, "'What's up, blood?,'" to a male inside the vehicle and then looked toward the victim. The victim asked, "'[W]hy you look over here at me?'" Defendant then walked over to the victim, and the two started arguing. Defendant said he was a "Crip" gang member and asked the victim where he was from.

---

[1] All section references are to the Penal Code unless otherwise indicated.

A Black male, in a red shirt, later identified as codefendant Isaiah Howard, got out of the driver's seat of the Impala, approached the victim and defendant, and told the victim that he was a "Blood" gang member. Defendant backed away from the victim and asked Howard for a gun. Howard lifted his shirt, pulled the gun from his front pocket, and handed it to defendant, who continued to argue with the victim. Defendant stepped closer to the victim, "racked" the gun, and pointed it at the victim.[2] Two bullets jumped out of the firearm, indicating a misfire, and the victim was "hit in the head."[3] Defendant started running away. The victim chased defendant but fell over a curb and landed on the ground. While on the ground, he was kicked by both defendant and Howard. As the victim stood up, he heard a gunshot, looked down at his body, and saw blood. The victim was also bleeding from his head.[4] Defendant and Howard left. The victim started walking home but was approached by the police.

---

[2] The gun was pointed at either the victim's head or the midsection of his body.

[3] The victim did not know if his head injury was caused by a gunshot, by defendant, or by something else. He attempted to testify that a doctor told him a bullet grazed his head, but the testimony was stricken following defendant's objection and motion to strike.

[4] Although there was no direct evidence that a gunshot wound caused the victim's head injury, defendant's opening brief references two gunshot wounds, one prior to the victim falling and a second after he fell to the ground. Defendant states that he "fired an initial shot and then ran away," and the victim "chased after him, tripped and fell." Defendant admits that he and Howard kicked the victim and, after the victim stood up, a second shot was fired.

When police arrived, they found two live .380-caliber rounds and a .380-caliber casing at the scene. One of the live rounds had a scratch on its side, consistent with a "double feed," i.e., two rounds going into the chamber at once, due to a malfunction with a semiautomatic handgun. Using surveillance video from the smoke shop, along with video and still photographs from a cell phone, the deputies were able to identify the individuals involved in the attack as defendant and Howard. Subsequently, they apprehended Howard, who was driving a Chevy Impala. A search of his vehicle produced the gun that fired the cartridges found at the scene of the attack. The victim was taken to the hospital for treatment of a gunshot wound to his left shoulder and a contusion to his scalp. He was shown photographic lineups and identified both Howard and defendant.

The owner of the smoke shop was working on February 20, 2016, around 1:00 p.m., when he heard a fight outside the store. He went to the door and saw three or four Black males fighting. Two of the males were customers, whom he knew as "Daniel" and "DJ." The store owner saw Daniel hand a gun to DJ, who took a couple of steps toward the victim, racked the gun, pointed it at the victim, and fired. The owner also witnessed DJ and Daniel kick the victim, as he was "bleeding, and . . . on the ground." The owner said he saw Daniel leave in his car, but he did not see what happened to DJ. He identified "Daniel" as Howard and "DJ" as defendant.

B. *The Defense.*

Defendant testified on his own behalf. He stated that he grew up in Moreno Valley, played football and basketball at Vista Del Lago High School, was a varsity team

4

captain of the basketball team, has never been a member of a gang,[5] and does not hang out with gang members. He admitted that he knew Howard, who was on his basketball team, but claimed ignorance about Howard's gang membership or if Howard carried guns. Defendant testified that in 2016, he worked Monday through Friday. On Fridays, he worked the late shift—until midnight or 1:00 a.m.—and usually slept late or played basketball at the gym on Saturdays. He admitted to being inside the smoke shop "once, maybe twice," by himself, but he denied telling the store owner his name or that DJ was his nickname. Defendant denied being at the smoke shop on February 20, 2016; denied having anything to do with the victim; and denied fighting with and shooting the victim.

## II. DISCUSSION

*A. The Trial Court Properly Refused to Disclose Juror Identifying Information.*

Defendant contends the trial court abused its discretion by denying his motion to disclose juror identifying information. We disagree.

*1. Additional background information.*

The jury returned its verdict on November 28, 2018. On April 5, 2019, defendant petitioned the trial court to disclose the jurors' identities. He argued that, after the verdict was recorded and the juror information was sealed, several jurors spoke to the prosecutor and defense attorney. According to defense counsel's declaration, "One single juror waited for the others to disperse, and approached myself and the prosecutor. During the

---

[5] While the prosecution alleged the attempted murder was for the benefit of a gang (§ 186.22, subd. (b)(1)(C)) and introduced gang evidence, the jury rejected the sentencing enhancement allegation. To the extent gang evidence is relevant to any issue raised, it will be discussed within the analysis of that issue.

5

conversation, she expressed remorse at her decision of guilt and expressed doubt as to [defendant's] guilt. She indicated she felt pressured by the other jurors into her vote of guilty." Opposing the petition, the prosecutor argued that the allegations of misconduct based on a single juror's expression of remorse at her decision, doubt as to defendant's guilt, and a feeling of being pressured by other jurors, are, at best, "speculative, conclusory and vague and fail to establish even a prima facie case of good cause for the release of information." The prosecutor pointed out that "there were never any issues pertaining to the jury or a particular juror engaging in misconduct. Nor did any issue arise of the jury having been subjected to any information obtained outside the confines of the trial."

The trial court denied defendant's request on the ground defendant had not made a prima facie showing of good cause for disclosure. The court stated that a juror feeling "pressure from other jurors would not be . . . sufficient in terms of showing misconduct." The court added that "how an individual juror went through the process of decision-making, and how [he or she] came to that decision in her or his own mind, would be inadmissible in a motion for new trial. [¶] And so without some type of reference that a juror had done something that pointed to misconduct as opposed to a juror who spoke with an attorney after the trial said subjectively that he or she felt pressure from the other jurors, I don't think shows a reasonable probability that the information would turn up juror misconduct."

6

## 2. *Applicable law.*

After the jury's verdict is recorded in a criminal case, personal identifying information about the jurors is sealed. (Code Civ. Proc., § 237, subd. (a)(2).) However, "a defendant or defendant's counsel may, following the recording of a jury's verdict in a criminal proceeding, petition the court for access to personal juror identifying information within the court's records necessary for the defendant to communicate with jurors for the purpose of developing a motion for new trial or any other lawful purpose." (Code Civ. Proc., § 206, subd. (g); see § 237, subd. (a)(2).) A petition for access to personal juror identifying information must be "supported by a declaration that includes facts sufficient to establish good cause for the release of the juror's personal identifying information." (Code Civ. Proc., § 237, subd. (b); see § 206, subd. (g).)

"'Good cause, in the context of a petition for disclosure to support a motion for a new trial based on juror misconduct, requires "a sufficient showing to support a reasonable belief that jury misconduct occurred . . . ."'" (*People v. Johnson* (2015) 242 Cal.App.4th 1155, 1161-1162.) The alleged misconduct must be "'of such a character as is likely to have influenced the verdict improperly.'" (*People v. Jefflo* (1998) 63 Cal.App.4th 1314, 1322.) "Good cause does not exist where the allegations of jury misconduct are speculative, conclusory, vague, or unsupported." (*People v. Cook* (2015) 236 Cal.App.4th 341, 345-346.) Requests for the release of confidential juror records "'should not be used as a "fishing expedition" to search for possible misconduct . . . .'" (*People v. Avila* (2006) 38 Cal.4th 491, 604 [evidentiary hearing should be held only where defense evidence shows strong possibility of prejudicial misconduct].) "'Absent a

7

satisfactory, preliminary showing of possible juror misconduct, the strong public interests in the integrity of our jury system and a juror's right to privacy outweigh the countervailing public interest served by disclosure of the juror information . . . .'" (*People v. Carrasco* (2008) 163 Cal.App.4th 978, 990.)

We review the denial of a petition to disclose juror identifying information for abuse of discretion. (*People v. Jones* (1998) 17 Cal.4th 279, 317 (*Jones*).)

### 3. *Analysis.*

Here, we find no abuse of discretion. As noted *ante*, speculation on how the jury arrived at its verdict does not establish good cause for releasing juror identifying information. Defense counsel's declaration failed to make a sufficient showing "'to support a reasonable belief that jury misconduct occurred.'" (*Jones*, *supra*, 17 Cal.4th at p. 317.) Rather, the whole purpose of the request for disclosure of the jurors' personal information was to allow defense counsel to *investigate* evidence of jury misconduct. However, this amounts to an impermissible "'"fishing expedition" to search for possible misconduct.'" (*People v. Avila*, *supra*, 38 Cal.4th at p. 604.)

As the trial court noted, the juror's feeling of being "pressured" is insufficient to establish that she had been "improperly pressured or coerced" into voting to convict. The juror did not state or suggest that improper deliberations had occurred or that the verdict was reached by chance or other improper means. Nor did she claim that she was not allowed to actively participate in deliberations, that her views had been ignored, or that she was shunned or marginalized. She merely expressed remorse and doubt at her decision to convict. Those feelings are normal, not signs of misconduct. Jury trials may

8

be difficult and exhausting for jurors, especially in cases with facts like this one. Deliberations may be intense and taxing; jurors often struggle to reach a decision. Whatever the juror might have subjectively perceived during deliberations, access to juror identifying information is permissible only upon a sufficient showing "'to support a *reasonable* belief that jury misconduct occurred'" (*Jones*, *supra*, 17 Cal.4th at p. 317, italics added), and no such showing was made here.

   B. *Sufficiency of the Evidence for Attempted First Degree Murder*.

Defendant challenges his conviction for attempted first degree murder. He contends there was insufficient evidence to find the shooting was premeditated and deliberate. We disagree.

   1. *Standard of review.*

Upon a challenge to the sufficiency of evidence for a jury finding, we review "'"the entire record, in the light most favorable to the judgment, for the presence of substantial evidence. Substantial evidence is evidence sufficiently reasonable, credible, and of such solid value 'that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.'"' [Citations.] . . . [¶] '"Even where . . . the evidence of guilt is largely circumstantial, our task is not to resolve credibility issues or evidentiary conflicts, nor is it to inquire whether the evidence might "'be reasonably reconciled with the defendant's innocence.'"'" [Citation.] Instead, '"[w]e presume in support of the judgment the existence of every fact the trier of fact reasonably could infer from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also

9

reasonably be reconciled with a contrary finding.""" (*People v. Pettigrew* (2021) 62 Cal.App.5th 477, 490-491.)

   *2. Applicable law.*

  "'A murder that is premeditated and deliberate is murder of the first degree.' [Citation.] "'In this context, 'premeditated' means 'considered beforehand,' and 'deliberate' means 'formed or arrived at or determined upon as a result of careful thought and weighing of considerations for and against the proposed course of action.'"' [Citation.] "'An intentional killing is premeditated and deliberate if it occurred as the result of preexisting thought and reflection rather than unconsidered or rash impulse.'" [Citations.] 'The true test is not the duration of time as much as it is the extent of the reflection. Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly . . . .'" (*People v. Potts* (2019) 6 Cal.5th 1012, 1027.)

  In *People v. Anderson* (1968) 70 Cal.2d 15 (*Anderson*), the California Supreme Court held that there are three basic categories of evidence sufficient to sustain a finding of premeditation and deliberation: (1) "facts about how and what defendant did *prior* to the actual killing which show that the defendant was engaged in activity directed toward, and explicable as intended to result in, the killing"; (2) "facts about the defendant's *prior* relationship and/or conduct with the victim from which the jury could reasonably infer a 'motive' to kill the victim"; and (3) "facts about the nature of the killing from which the jury could infer that the *manner* of killing was so particular and exacting that the defendant must have intentionally killed according to a 'preconceived design.'" (*Id.* at

pp. 26-27.) Following *Anderson*, the Supreme Court "'emphasized that its guidelines are descriptive and neither normative nor exhaustive, and that reviewing courts need not accord them any particular weight.'" (*People v. Rivera* (2019) 7 Cal.5th 306, 324.) "When evidence of all three categories is not present, 'we require either very strong evidence of planning, or some evidence of motive in conjunction with planning or a deliberate manner of killing.'" (*People v. Cole* (2004) 33 Cal.4th 1158, 1224.)

       *3. Analysis.*

Defendant relies on the *Anderson* factors and argues that there was no planning evidence, no evidence of a prior relationship, and the manner of killing was not so particular or exacting to suggest he "'must have intentionally [tried to kill] according to a "preconceived design" to take his victim's life in a particular way.'" Acknowledging there were two separate rounds of gunfire—initially while the two were arguing and, later, after the victim chased defendant, fell, and stood up—defendant argues that his actions are not consistent with a "premeditated plan to kill" because he "ran away" after the initial round of fire and was "in the heat of an active battle" at the time of the second round.[6] The People point to evidence in support of the *Anderson* factors and argue that the presence of all three factors is unnecessary for a finding of premeditation and deliberation. We conclude all three types of evidence were present.

_____

[6] Defendant also argues that there is no evidence as to who fired the second shot. However, the record contains evidence from which the jury could reasonably infer that defendant was the sole shooter. It is well settled that "'[a] reversal for insufficient evidence "is unwarranted unless it appears 'that upon *no hypothesis whatever* is there sufficient substantial evidence to support'" the jury's verdict.'" (*People v. Penunuri* (2018) 5 Cal.5th 126, 142, italics added.)

11

Here, planning is demonstrated by the fact that during his argument with the victim, defendant asked for and obtained a gun, moved closer to the victim, racked the gun, and pointed it at the victim's head. (*People v. Koontz* (2002) 27 Cal.4th 1041, 1081-1082 [evidence of planning included defendant arming himself and following the victim to another location]; see *People v. Ramos* (2004) 121 Cal.App.4th 1194, 1208 [defendant arming himself "demonstrated planning and a preconceived willingness to take immediate lethal action should the need arise"].) Further evidence of planning is supported by defendant's two separate rounds of gunfire: (1) when the victim was shot "in the head" because defendant misfired the gun, while pointing it at the victim's head or midsection; and (2) when defendant fired two more shots at the victim after he stood up, following a chase where the victim fell and was kicked by defendant and Howard. The second, separate round of gunfire provides evidence from which the jury could have reasonably concluded defendant tried to carry out his plan of killing the victim. (E.g., *People v. Welch* (1999) 20 Cal.4th 701, 759 [second shot tended to show premeditation].)

In response, defendant rightly notes that he was not armed "well in advance of [the] conflict" but during it. However, what occurred within the few minutes it took for defendant to arm himself is particularly telling with respect to his state of mind and, as defendant concedes, it provides evidence that the motive for the shooting involved "gang respect." The victim testified that defendant identified himself as a "Crip" gang member, and Howard said he was a "Blood" gang member. The victim also testified that defendant "asked me where I was from," meaning what gang he belonged to, and the victim told defendant he was from "nowhere." A gang expert testified that (1) Howard

12

was a documented Edgemont (more specifically the Brodiaea Boys) gang member, (2) respect is earned in a gang by the types of crimes and the violence a member is willing to produce, (3) a gang member protects the gang's territory when a rival gang member enters, (4) the shooting of the victim was for the benefit of the Edgemont gang, and (5) while incarcerated in jail, defendant engaged in a fight with rival (Sex Cash Money) gang members. Based on the gang expert's testimony, the jury could have reasonably inferred that (1) defendant felt disrespected in front of Howard, when the victim asked, "'[W]hy you look over here at me?'"; and (2) defendant responded to the disrespect by aiming the gun and firing it at the victim. (*People v. Martinez* (2003) 113 Cal.App.4th 400, 413 [jury "could reasonably infer . . . that the motive for the shooting involved gang rivalry," and the defendant acted deliberately in aiming the gun and firing it as rival gang members fled].)

In conjunction with defendant's motive (gang rivalry), the manner of the attack supports a finding of premeditation and deliberation. First, defendant used a firearm against an unarmed and defenseless person. (*People v. Bolin* (1998) 18 Cal.4th 297, 332-333.) Second, he fired shots at a vital area of the victim's body at close range. (*People v. Koontz*, *supra*, 27 Cal.4th at p. 1082.) And finally, there were multiple stages of defendant's attack—(1) aiming and firing the gun at the victim's head and/or midsection; (2) kicking the victim while he was on the ground; and (3) firing a second round of shots at the victim after he stood up. From this conduct, the jury could have reasonably found that defendant had more than one opportunity to end his attack on the victim but chose to continue a plan to kill him because he had disrespected defendant. (See *People v.*

13

*Streeter* (2012) 54 Cal.4th 205, 244 [manner of killing suggested premeditation and deliberation where "defendant's acts occurred in stages"]; *People v. Pettigrew*, *supra*, 62 Cal.App.5th at pp. 493-494 [same].)

Relying on *People v. Nelson* (2016) 1 Cal.5th 513, defendant argues that his conviction of attempted first degree murder should be reversed because there is "no way to conclude, without resorting to speculation," that he fired the second round of shots. His reliance on *Nelson* is misplaced. In that case, the California Supreme Court found insufficient evidence of the lying-in-wait special circumstance because the evidence only showed the defendant "came up behind his victims on foot to take them by surprise," and no evidence showed that he "arrived before the victims or waited in ambush for their arrival." (*Id*. at p. 551.) The court, however, found sufficient evidence to prove premeditation and deliberation. (*Id*. at p. 552 ["[T]he fact that there was substantial evidence of premeditation and deliberation does not necessarily mean there was substantial evidence of watching and waiting for an opportune time to act."].)

Viewing the record in its entirety, sufficient evidence supports a finding that the shooting was premeditated and deliberate.

*C. Remand of the Firearm Use Enhancement is Not Warranted.*

Defendant contends the trial court abused its discretion by refusing to strike or reduce his firearm use enhancement. (§ 12022.53.) We disagree.

*1. Additional background information.*

Defendant requested the trial court strike his firearm use enhancement or reduce it to a lesser enhancement under section 12022.53. The prosecutor argued there was no

14

"legal basis for doing so, based on the facts of this particular case." The trial court agreed with the prosecutor and stated: "[T]he victim in the case was alone. [Defendant], although he denies being there, the evidence that the jury found was that he was with other people. So it was more than one person who was with [defendant] against a sole victim. The victim was unarmed, and I was a little unclear on whether the victim was facing away from [defendant] at the time he was shot and shot in the back, or whether he was facing [defendant]. It's—the victim said, I did not see when I was shot, the shooter. [¶] There's also evidence that before the shooting that [defendant] struck the victim on the head with the firearm. So when I look at the reasons why I would strike the firearm allegation or reduce it in the interest of justice, I don't see a lot of reason to do so. Number one, because of the vulnerability of the victim in this case in being alone against a group and unarmed against an armed assailant and, secondly, because of the physical attack ahead of time with the firearm, without discharging it, and then choosing to shoot an unarmed person. And, again, I'm not sure if the victim was just looking away or whether the victim was shot in the back. But the victim either way was in a vulnerable position and not in a situation where [defendant's] actions are mitigated by an unprovoked attack from the victim. So for those reasons, I choose not to exercise my discretion to strike the firearm allegation under 12022.53, subdivision (d)."

   2. *Applicable law.*

  Section 12022.53 provides for "escalating additional and consecutive penalties, beyond that imposed for the substantive crime, for use of a firearm in the commission of specified felonies" (*People v. Gonzalez* (2008) 43 Cal.4th 1118, 1124), subject to the trial

15

court's ability to exercise its discretion to strike or dismiss the enhancement "in furtherance of justice" (§ 1385, subds. (a), (b)).  (See § 12022.53, subd. (h).)  If the trial court exercises its discretion and strikes or dismisses the enhancement, it must state the reasons underlying the exercise of such discretion on the record.  (§ 1385, subd. (a).)

Pursuant to section 12022.53, there are "three different sentence enhancements for the personal use of a firearm in the commission of certain offenses:  a 10-year enhancement for personal use (§ 12022.53, subd. (b)); a 20-year enhancement for personal and intentional discharge (§ 12022.53, subd. (c)); and a 25-year-to-life enhancement for personal and intentional discharge causing great bodily injury or death (§ 12022.53, subd. (d)), which is the one at issue here.  [¶]  Section 12022.53 enhancements used to be mandatory, but as of January 1, 2018, trial judges have discretion to strike or dismiss them 'in the interest of justice' under section 1385.  [Citations.] . . . [¶]  We review the denial of a motion to dismiss an enhancement for abuse of discretion and will not reverse the ruling unless it '"is so irrational or arbitrary that no reasonable person could agree with it."'"  (*People v. Flores* (2021) 63 Cal.App.5th 368, 375-376.)

### 3. Analysis.

Here, defendant disagrees with the imposition of the firearm use enhancement.  He argues that the trial court's decision shows that it thought a firearm enhancement was

16

appropriate but does not show *which* one was best suited to this case.[7]  He further asserts

the court erred (1) in failing to consider that the 25-year-to-life enhancement makes his

sentence longer than many murder sentences, and (2) in failing to acknowledge that

defendant was 18 years old at the time of the offense, he had no juvenile adjudications, he

had an insignificant record of malfeasance, he was an accomplished high school athlete,

and the jury rejected the gang allegation.

It is a defendant's burden to clearly show that """"the sentencing decision was

irrational or arbitrary.  [Citation.]  In the absence of such a showing, the trial court is

presumed to have acted to achieve legitimate sentencing objectives, and its discretionary

determination to impose a particular sentence will not be set aside on review."""  (*People

v. Carmony* (2004) 33 Cal.4th 367, 376-377; accord, *People v. Lee* (2017) 16 Cal.App.5th

861, 866.)  Also, "a '"decision will not be reversed merely because reasonable people

might disagree.  'An appellate tribunal is neither authorized nor warranted in substituting

its judgment for the judgment of the trial judge.'"""  (*Carmony*, at p. 377.)  "Taken

---

[7]  In support of his assertion that the trial court could have reduced the firearm use enhancement to a lesser enhancement in section 12022.53, defendant relies on *People v. Morrison* (2019) 34 Cal.App.5th 217.  However, subsequent cases have disagreed with *Morrison*, and the issue is now on review before our Supreme Court.  (See *People v. Delavega* (2021) 59 Cal.App.5th 1074, 1086-1096, review granted Apr. 14, 2021, S267293; *People v. Valles* (2020) 49 Cal.App.5th 156, 166-167, review granted July 22, 2020, S262757; *People v. Garcia* (2020) 46 Cal.App.5th 786, 788-789, review granted June 10, 2020, S261772; *People v. Yanez* (2020) 44 Cal.App.5th 452, 459-460, review granted Apr. 22, 2020, S260819; *People v. Tirado* (2019) 38 Cal.App.5th 637, 644, review granted Nov. 13, 2019, S257658.)  In *Yanez*, this court agreed with *Tirado* and concluded that judges lack discretion under sections 1385 or 12022.53 to impose a lesser enhancement.  (*Yanez*, at pp. 458-460.)  In any event, because we conclude the trial court did not abuse its discretion in imposing the enhancement, declining to reduce the enhancement would not be an error even under the *Morrison* view.

together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Ibid*.)

"The factors that the trial court must consider when determining whether to strike a firearm enhancement under section 12022.53, subdivision (h) are the same factors the trial court must consider when handing down a sentence in the first instance." (*People v. Pearson* (2019) 38 Cal.App.5th 112, 117.) "In addition to the factors expressly listed for determining whether to strike enhancements listed in California Rules of Court, rule 4.428(b), the trial court is also to consider the factors listed in California Rules of Court, rule 4.410 (listing general objectives in sentencing), as well as circumstances in aggravation and mitigation under California Rules of Court, rules 4.421[8] and 4.423.[9] '[U]nless the record affirmatively reflects otherwise,' the trial court is deemed to have considered the factors enumerated in the California Rules of Court." (*Pearson*, at p. 117.)

Contrary to his assertion, defendant is not entitled to relief from the firearm enhancement pursuant to sections 12022.53, subdivision (h), and 1385, subdivision (b),

---

[8]  The relevant aggravating factors include (1) the crime involved great violence or great bodily harm, (2) defendant was armed, (3) the victim was vulnerable, (4) defendant induced others to participate in the crime, and (5) defendant engaged in violent conduct that indicates a serious danger to society.  (Cal. Rules of Court, rule 4.421(a)(1)-(4), (b)(1).)

[9]  The only relevant mitigating factor is defendant's insignificant record of criminal conduct.  (Cal. Rules of Court, rule 4.423(b)(1).)

18

and he cites no legal authority and makes no legal argument to the contrary.**10**  Instead, his argument merely conveys his disagreement with the trial court's decision to refrain from exercising its discretion to strike or dismiss the enhancement "in furtherance of justice."  (§§ 1385, subds. (a), (b), 12022.53, subd. (h).)  However, defendant fired multiple rounds of gunfire at (and physically assaulted) an unarmed man because defendant felt disrespected when the victim asked, "'[W]hy you look over here at me?'"  In stating its reasons for refusing to exercise its discretion, the trial court focused on the vulnerability of the victim, who was alone and unarmed; the danger posed by defendant, who was armed and supported by others; and the seriousness of the victim's injuries.  The court's failure to explicitly mention defendant's age (18 years old) at the time of the attempted murder, along with his "[in]significant criminal history," signifies its decision to assess less weight to these factors in comparison to others.  (*Pearson*, *supra*, 38 Cal.App.5th at p. 117 ["'[U]nless the record affirmatively reflects otherwise,' the trial court is deemed to have considered the factors enumerated in the California Rules of Court."].)  We discern no viable basis for a claim that because the trial court declined to exercise discretion to strike the enhancement, it abused its discretion.

---

**10** Defendant *does*, however, provide legal authority for his claim that "the transient factors of youth . . . make offenders such as [himself] less culpable because of the ongoing but incomplete cognitive development inherent in their age."

## III. DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORT

McKINSTER
                                                                    J.

We concur:


RAMIREZ
            P. J.


MENETREZ
            J.